RAYMOND O. LIEBSCH v. HOWARD ABBOTT AND OTHERS.

122 N. W. (2d) 578.

May 29, 1963—No. 38,873.

448

*Kempf & Ticen,* for appellants.
*Larkin, Hoffman, Daly, Corcoran & Lindgren,* for respondent.

NELSON, JUSTICE.

Defendants appeal from a judgment in plaintiff's favor.

According to the stipulated facts, on or about May 6, 1961, plaintiff buyer, Raymond O. Liebsch, and defendant seller, Golden Keys Construction Company, Inc., entered into an agreement for the purchase and sale of residence property at the stated price of $28,000. (The individual defendants are officers of the corporation.) The agreement provided for an earnest money payment of $500, and a check in that amount was given by plaintiff. By agreement between the parties it was never presented for payment.

Plaintiff was in the process of securing a divorce when the purchase agreement was signed. Defendants were aware of the pending divorce proceedings. Following execution of the purchase agreement plaintiff applied for a mortgage at the Richfield State Bank, Richfield, Minnesota, intending to use the proceeds to pay the unpaid balance of the purchase price. Since he could not produce a divorce decree, the loan was refused. This fact was communicated to defendants.

Thereafter the parties signed a second agreement, substituted for the first, and predated to May 6, 1961. The second agreement recited that $1,900 was received as earnest money to apply on the purchase price of $29,900, but this payment was not made and the parties did not intend that it should be. Following the signing of the second purchase agreement, plaintiff did pay defendants the sum of $7,000 to apply on the purchase price of $29,900. The substituted purchase agreement provided that the buyer would obtain a mortgage in the amount of $20,000, on or before the closing date of the transaction, and plaintiff applied to the George C. Jones Company of Minneapolis for a mortgage in that amount. A commitment for the mortgage was made, and the Jones company requested that plaintiff produce his divorce papers for inspection. On learning that he had not yet obtained the divorce and was not able to obtain his wife's signature to the mortgage, this firm also refused to make the loan. Subsequently, defendants notified plaintiff by letter that the purchase agreement must be performed within 30 days in order to avoid a default.

Plaintiff countered by commencing this action on November 9, 1961,

to recover money paid on the purchase agreement in the amount of $7,500, alleging that he had relied upon defendants' representations that they had obtained a $20,000 mortgage for him to enable him to purchase the property; that in reliance on such representations plaintiff paid $7,000 to defendants; that defendants had not obtained such mortgage and never did so; that after plaintiff's failure to obtain the promised mortgage, they notified him that he must perform within 30 days or be in default; and that they failed to fulfill all the conditions of the purchase agreement.

Defendants answered by general denial and counterclaim. After service of the answer they also served on plaintiff a notice of cancellation of contract pursuant to Minn. St. 559.21. Subsequent to the service of this notice, 30 days elapsed during which time plaintiff took no further action. Defendants thereafter moved for dismissal of plaintiff's action, basing that motion on the notice of cancellation, and plaintiff moved for judgment on the pleadings. The trial court denied both motions and after trial to the court found that plaintiff was entitled to judgment against defendants in the amount of $6,500, after forfeiture of $500, which it held was intended to be liquidated damages under both the first and the second purchase agreements.

In its memorandum the trial court reasoned that since both executory purchase agreements were prepared by defendants and both provided that upon default all payments upon the contract would be retained by the seller as liquidated damages, time being of the essence, and that since the provisions of the substituted contract provided that if the buyer defaulted in any of its provisions the earnest money should be forfeited to the seller without limiting any right in law or equity available to the seller, it was the intention of the parties in executing the second purchase agreement to prevent a forfeiture, in the event of default, of any sum in excess of the amount properly determined to constitute the earnest money payment. The court gave full credence to the fact that the parties had stipulated that the $1,900 described as earnest money paid in the second purchase agreement was actually neither paid nor intended to be paid, and that the check of $500 originally delivered as earnest money was, in fact, surrendered to the buyer as a part of the transaction which

resulted in the payment of the sum of $7,000. The court decided that $500 was, in fact, the earnest money agreed upon as liquidated damages and should be deducted from the $7,000 payment. The court also found that the executory contract of purchase was terminated by the statutory notice given by defendants, but that, even though the contract had been terminated, its provisions relating to payments made remained in effect until such time as the matter was fully adjusted between the parties.

■ A material breach of contract justifies the other party in rescinding. The failure or refusal of one party to an executory contract to perform constitutes a legal justification for the other party to rescind and demand to be restored to his former position, if he is himself without fault. See, Heyn v. Braun, 239 Minn. 496, 59 N. W. (2d) 326; 4 Dunnell, Dig. (3 ed.) § 1808, and cases cited.

The general rule is that a party who wishes to rescind an agreement must place the opposite party in status quo. An attempted restoration of the status quo is an essential part of a rescission of a contract unless such restoration is impossible. See, Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257; Beck v. Spindler, 256 Minn. 565, 99 N. W. (2d) 684; 4 Dunnell, Dig. (3 ed.) § 1808.

■ This court has held that Minn. St. 559.21 does not prevent the purchaser's abandonment of the contract and does not provide the exclusive remedy of the vendor for a breach of the contract. Section 559.21 is cumulative and does not exclude the vendor's right of action against a defaulting vendee for specific performance or for a judicial termination of the contract. Miller v. Snedeker, 257 Minn. 204, 101 N. W. (2d) 213. In that case we said (257 Minn. 219, 101 N. W. [2d] 225):

"* * * We have heretofore said that bringing an action is better for the vendee and gives him much more opportunity to protect his rights than the statutory cancellation. * * * What the aforesaid section [§ 559.21] does provide is the method by which, unaided by litigation, the vendor may cancel the contract when the purchaser defaults. * * *

"This court in Mason v. Edward Thompson Co. 94 Minn. 472, 474, 103 N. W. 507, stated the rule as follows:

" '* * * the law is well settled that *the right to rescind on the ground*

*of failure of performance belongs to the party who is himself without fault. \* \* \*' "*

■ In Knappen v. Freeman, 47 Minn. 491, 493, 50 N. W. 533, 534, Mr. Chief Justice Gilfillan in discussing what it is necessary for a party to do when he seeks to rescind a contract by his own act, said:

"\* \* \* When a party seeks to rescind a contract by his own act, he must give the other party notice of his rescission, and restore or offer to restore to him whatever he received from him under or by reason of the contract. \* \* \* When, however, he seeks the aid of a court to rescind the contract, it is not necessary that he should have previously attempted a rescission, nor that he should have made any tender \* \* \*. What he ought to do, and must do, to reinstate the other party in statu quo, as a condition of the rescission, is then for the court to determine. All that is required to justify a rescission by the court is that the contract is one that a court of equity will cancel or rescind on the ground alleged, that such ground of rescission exists, and that the plaintiff has not lost his right to a rescission by affirmance, laches, or otherwise."

■ In The Independent Harvester Co. v. Malzohn, 147 Minn. 145, 179 N. W. 727, this court held that where one party to a contract refuses to perform the substantial part of the contract, the other party may rescind it.

In First Nat. Bank v. Blocker, 150 Minn. 337, 185 N. W. 292, we held that an action in equity to rescind a contract for the alleged fraud of defendant may be maintained without the prior service of notice of an election to rescind; that the commencement of the action is sufficient notice of such election; and that the required tender or offer to return what plaintiff received in the transaction may be made in the complaint.

■ In Brown v. California & Western Land Co. 145 Minn. 432, 436, 177 N. W. 774, 776, upon failure of the vendors to furnish a marketable title as required under a contract for sale of real estate, the vendees rescinded and brought action to recover payments made under the contract. We there said:

"\* \* \* This is not an action to rescind, but an action to recover money

paid on the theory that rescission had already been made by the act of plaintiffs. If rescission had been made by plaintiffs for justifiable cause, defendant could not undo it. Rescission annihilates the contract, and, after a binding election to rescind, each party is returned to his previously existing rights."

We think that plaintiff did, in fact, rescind in the instant case. He made it clear in his complaint that he demanded the refund of his money because defendants had failed to perform the promise to assist him in obtaining the necessary mortgage loan to fulfill the terms of the purchase agreement. They had notified him that unless he paid the balance of the purchase price within 30 days, which they knew he was unable to do, the contract would terminate.

■ In Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641, we held that the intent necessary to rescission of a contract, either by mutual consent of the parties, or by one of them for legal cause, may be inferred from conduct.

It appears from the stipulated facts that plaintiff proceeded to rescind because there was no further hope that defendants would be able to obtain the purchase money mortgage for him. The contingency upon which his ability to purchase depended having thus failed he immediately commenced suit following defendants' letter stating that the contract would terminate in 30 days unless he exercised the purchase agreement within that time. In the Brown case this court said (145 Minn. 436, 177 N. W. 776):

"There is authority to the effect that notice is necessary to consummate rescission and that such notice must be given before commencement of an action to recover the amount parted with. [Citations omitted.] Doubtless this is true. Such notice need not, however, be in express terms or couched in any particular language. We think notice was given in this case from which defendant must have understood that failure to perform on its part would be followed by a suit by plaintiffs to recover their money back. This is sufficient. [Citations omitted.]"

■ Defendant corporation in the instant case, after issue was joined in what in effect constituted a rescission action, commenced statutory

cancellation under § 559.21. Plaintiff did not attempt to enjoin the cancellation proceedings. Regardless of that fact, issues were voluntarily joined and litigated by both parties in the rescission action and were, therefore, properly considered by the court in determining the case. See, Brown v. California & Western Land Co. *supra*.

Furthermore, § 559.21 contemplates contracts of actual purchase and not agreements wholly dependent upon some contingency. In Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410, 744, the vendee brought an action to enforce specific performance of a contract for sale of land and the trial court found in his favor. The vendor appealed and this court reversed, holding that the contract of purchase depended upon the condition of the title and became void upon the vendor's failure to furnish good title within the required time. We also said that the statute then providing for cancellation of contracts for the purchase of land (L. 1897, c. 223) had reference only to contracts of actual purchase and not to agreements which, in their nature, are mere options depending upon some contingency. See, Finnes v. Selover, Bates & Co. 102 Minn. 334, 336, 113 N. W. 883.

The district court file in the instant case discloses that as late as January 16, 1962, two months after the action for rescission was instituted, defendant Howard Abbott received the following letter from H. R. Baarson, vice president of George C. Jones Company:

"Under date of July 24, 1961, Raymond O. Liebsch applied for a conventional loan on property located at the N. E. corner of 136th Street and Garfield, Burnsville Twp., Dakota County, Minnesota. The loan was processed, and was submitted to an investor who issued its commitment for the same.

"It developed that the loan could not be completed for the reason that Mr. Liebsch informed us that he was having difficulty in obtaining a divorce from his wife in DeSmet County, South Dakota. It is likewise our understanding that he is unable to obtain her signature to the proposed mortgage.

"The transaction is still open, and our commitment is still in force."

We think this letter indicates that there had been representations on the part of defendants that they could obtain a $20,000 mortgage for

plaintiff in order to enable him to meet the terms of the purchase agreement. It also indicates that there had been efforts on the part of defendants to comply with the representations made to plaintiff.

Another factor which may be taken into account is that neither of the agreements contained any provision for statutory cancellation. The substituted agreement provided only that—

"* * * If this agreement is not accepted by the seller or title made marketable, as herein provided, the above earnest money shall forthwith be returned to the buyer. If buyer defaults in any of the provisions of this agreement the earnest money shall be forfeited to the seller and agent as their interests may appear without limiting any other right at law or equity available to the seller."

After institution of plaintiff's action, defendant Howard Abbott executed an affidavit dated November 16, 1961, for the purpose of inducing the auditor and treasurer of Dakota County to affix the mortgage registration tax on the purchase agreement, preparatory to the commencement of statutory cancellation. The affidavit stated that he had sold the property to plaintiff for "Twenty-nine Thousand Nine Hundred and no/100 ($29,900.00) Dollars, payable Eight Thousand Nine Hundred and no/100 ($8,900.00) Dollars, the receipt of which was acknowledged and the balance to be paid at closing by the purchaser obtaining a mortgage for Twenty Thousand and no/100 ($20,000.00) Dollars and the balance in cash." The original contract provided a consideration of $28,000. It contained a recital that earnest money was paid in the sum of $500. The second agreement, to which the affidavit refers, recites the payment of $1,900—admittedly never made—and also provides the following consideration: $20,000 mortgage, and on or before closing an additional $8,000. Below this recital has been added: "Paid this date, August 21, 1961, by Mr. Raymond O. Liebsch, the sum of $7,000.00." Thus, the affidavit made for the purpose of inducing the treasurer of Dakota County to accept payment of mortgage registration tax is at variance with the provisions of the purchase agreements. The $7,000 payment made under the substituted purchase agreement on August 21, 1961, was made after the commitment for a $20,000 mortgage had been obtained from the George C. Jones Company.

The foregoing facts clearly indicate that plaintiff's performance of the purchase agreement was wholly dependent upon a contingency, that of obtaining a $20,000 mortgage loan to pay the balance of the purchase price. Unless such loan was obtained, performance of the purchase agreement could not be required by either party.

Plaintiff commenced his action to recover what he had paid promptly. There was nothing for him to tender back. He had originally agreed that a $500 payment should be considered an earnest money payment and that upon his failure to perform it should be retained by the sellers as liquidated damages. The court found that he was obligated to that extent, but that he was entitled to the return of $6,500 of the $7,000 paid.

■ Defendants contend that the contract was cancelled and that because of such cancellation it was not available to the trial court for interpretation. They have cited no authority to support that claim. The substituted purchase agreement had no provision for statutory cancellation; neither have the defendants shown that this agreement, performance of which was wholly based upon a contingency, is one to which § 559.21 is applicable.

In Blosick v. Warmbold, 151 Minn. 264, 187 N. W. 136, there was no default at the time of service by the vendee of the notice of rescission. This court said in that case (151 Minn. 268, 187 N. W. 137):

"* * * The statutory notice to cancel the contract * * * can avail defendants nothing in this litigation. When the notice to rescind was served and an offer to return the property which plaintiff had received was made and positively refused by the defendants, if sufficient ground for rescission existed, plaintiff was entitled to recover the money with which he had parted. *Once rescinded, the contract was at an end and could not be canceled by statutory or any other kind of notice.*" (Italics supplied.)

■ Defendants made no motion for amended findings or a new trial. The scope of review on this appeal is therefore limited to a consideration of whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law and judgment. Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; Maust v. Maust, 222 Minn.

135, 23 N. W. (2d) 537; Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461.

Defendants argue that plaintiff sued for damages on the purchase agreement but that it was terminated by notice of cancellation defeating plaintiff's action, citing Olson v. N. P. Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962. This case, however, is not in point, as it is clear from a reading of the decision that it was one for damages based on a contract. In the instant case it is equally clear that plaintiff's action does not affirm the contract and ask for damages based on it, but repudiates the contract and requests a return of money improperly in the hands of defendants. The action seeks to compel one who is unjustly enriched at the expense of another to return that to which he is not entitled. See, Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443.

In Spiess v. Brandt, 230 Minn. 246, 255, 41 N. W. (2d) 561, 567, 27 A. L. R. (2d) 1, 10, we held:

"* * * Where a decision is correct, it need not be sustained for the same reason or for all the reasons relied upon by the trial court."

If any finding by the trial court sustains the decision here, any error with respect to other findings is immaterial.

Defendants elected their remedy by their answer and counterclaim prior to their attempted cancellation of the purchase agreement. They cite no authority which would allow them to pursue both remedies. In State Bank of Milan v. Sylte, 162 Minn. 72, 75, 202 N. W. 70, 71, we said that the vendor may elect which to pursue.

Affirmed.