Argued November 6, affirmed November 29, 1973

FRED MEYER, INC., *Appellant, v.* TEMCO METAL
PRODUCTS COMPANY, *Respondent.*

516 P2d 80

*Phillip D. Chadsey,* Portland, argued the cause for
appellant. With him on the briefs were Cleveland C.

Cory and Davies, Biggs, Strayer, Stoel and Boley, Portland.

*George P. Haley,* Portland, argued the cause for respondent. With him on the brief were Carney, Haley, Probst & Levak, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for damages by the holder of 30 forged checks to recover the loss it incurred after the checks had been stolen during a burglary of defendant's office and then cashed at several of plaintiff's stores. Plaintiff appeals from a judgment of involuntary nonsuit. We affirm.

Plaintiff's complaint alleged that defendant was negligent (1) in failing to place the blank checks in safekeeping; (2) in failing to place its check "protectograph" in safekeeping; and (3) in failing to lock the "protectograph" so as to render it unusable.

Plaintiff offered evidence that plaintiff, a large retail merchandiser, cashes payroll checks for its customers at its various stores pursuant to a policy requiring identification of the customer (payee) countersigning the instrument. The checks in question were all drawn on the defendant's Temco Metal Products Company commercial account and each instrument had imprinted upon it the company's name, trademark, address and magnetic account numbers, together with the name and address of the drawee bank. The checks had also been prenumbered by the printing company.

Each. of the checks was completed by typing in the date and name of the payee, filling in the amount of the check on the upper right-hand side in ink, and then imprinting the amount in the center of the check with a check "protectograph." Also imprinted with the defendant's "protectograph" was the name "Temco" before the imprinted amount and the word "Bonded" over the typed name of the payee.

Each check was for the amount of $186.34 and was made payable to either "Randall Lees" or "Anthony Haws." The face of the check was completed by signing the forged name of defendant's corporate secretary and bookkeeper, Lee Adams. Mrs. Adams was authorized to sign defendant's checks and only her signature on the checks was required.

On Saturday, October 4, 1969, Mr. DeHaan, plaintiff's director of security, became suspicious when, in the course of making a routine review of the checks which had been cashed at one store, he found one of defendant's checks and remembered that he had seen an identical check which had been cashed at a different store the same day.

DeHaan decided to attempt to contact defendant to find out whether or not the checks were valid. After he was unable to find the name of any of defendant's officers in the city directory, DeHaan had the Multnomah County Sheriff's Patrol locate on the front door of defendant's office an emergency number for the Portland Security Guards. Through the Guards' office, DeHaan was then able to contact by telephone the defendant's president, Mr. Keller. He arranged to meet Mr. Keller and Lee Adams at defendant's office at 11 o'clock the same night. While searching the office, they found that approximately 50 blank checks had been

taken out of one of three or four boxes of blank checks kept in an unlocked filing cabinet behind Lee Adams' desk. In a side room just off the office, the check "protectograph" was found on top of a refrigerator. It was "set" for the sum of $186.34.

Lee Adams testified that the check "protectograph" had been in her unlocked desk drawer. The "protectograph" could not be locked because there was no key. If there had been a key, the check "protectograph" could have been "locked in" at "zero."

Defendant's premises has a shop in the rear with overhead doors that lock, with a front door that locks and a door between the shop and the office which locks. Lee Adams testified that the office doors and windows were locked on the night in question. Mr. De-Haan testified about a conversation with defendant's shop foreman, who found that the lock on the door between the shop and the office had probably been knocked off by the burglars and then had been re-mounted before they left through the front door. It appeared that the burglars had come in through the shop skylight and had kicked open the door to the office. Mr. Keller also testified that defendant had suffered a previous burglary in 1967 when its shop was broken into and some shop tools were taken.

Plaintiff contends that this evidence was suffi-cient to present a jury question whether defendant was negligent and whether its negligence substantially con-tributed to the making of the forged checks, within the meaning of ORS 73.4060 of the Uniform Commercial Code, so as to preclude defendant's assertion of forgery as against plaintiff, a holder in due course, who claimed

to have paid the checks in accordance with the "reasonable commercial standards" of its business.[1]

Plaintiff calls our attention to paragraph 7 of the official comment to ORS 73.4060, which states that:

"ORS 73.4060 applies the same rule to negligence which contributes to a forgery or other unauthorized signature, as defined in ORS 71.2010. The most obvious case is that of the drawer who makes use of a signature stamp or other automatic signing device and is negligent in looking after it. ORS 73.4060 extends, however, to cases where the party had notice that forgeries of his signature have occurred and is negligent in failing to prevent further forgeries by the same person. It extends to negligence which contributes to a forgery of the signature of another, as in the case where a check is negligently mailed to the wrong person having the same name as the payee. As in the case of alteration, no attempt is made to specify what is negligence, and the question is one for the court or the jury on the facts of the particular case."

Plaintiff also reminds us that on an appeal from a judgment of involuntary nonsuit we must assume the truth of plaintiff's competent evidence and of every favorable inference from that evidence; that we have held that it is ordinarily for the jury to say whether conduct was negligent and was a substantial cause of harm, and that "* * * [t]he jury is given a wide leeway in deciding whether the conduct in question falls

---

[1] ORS 73.4060 provides:

"*Negligence contributing to alteration or unauthorized signature.* Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

above or below the standard of reasonable conduct deemed to have been set by the community," quoting from our decision in *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607, 469 P2d 783 (1970).

■ This, however, was not a case involving a "signature stamp or other automatic signing device" where "the party had notice that forgeries of his signature have occurred," as referred to in the official comment to ORS 73.4060. Defendant's check "protectograph" merely stamped the amount of the checks in such a manner as to make difficult the alteration of the amount. And while such checks might appear to be more authentic than the usual checks, they still had to be signed personally by defendant's corporate secretary and bookkeeper, whose signature was forged upon these checks. Neither did plaintiff offer any evidence that defendant had been put on notice of any previous forgeries.

It is true that the blank checks were in an unlocked cabinet and that the check "protectograph" was in an unlocked desk drawer in defendant's office. The door to the office was locked, however, as well as its windows and the exterior doors to the building. In addition, there was evidence that defendant employed a security service to check its premises periodically during the night. The burglars apparently obtained entrance to the adjoining shop through a skylight and then kicked open the door to the office.

In *Stewart v. Jefferson Plywood Co., supra* at 607, we also pointed out that:

"The issue of the defendant's negligence or the plaintiff's contributory negligence is frequently

withdrawn from the jury and is resolved by the trial court or by this court as a matter of law."

and (at 609) :

"* * * If, in our appraisal of the community's conception of fault, we find that the conduct in question clearly falls outside the conception, we are charged with the duty of withdrawing the issue from the jury."

Upon application of that test to the facts of this case, as previously set forth, we conclude that defendant's conduct "clearly falls" outside what we believe to be "the community's conception of fault," with the result that it is our duty to affirm the granting of the judgment of involuntary nonsuit in this case.

■ This is not a case in which conduct may be negligent for failure to foresee that such conduct may involve an unreasonable risk of harm to another person through the *negligent* conduct of a third person. Instead, this is a case in which it is contended that defendant was negligent for failure to foresee that his conduct may involve harm to another through the *criminal* conduct of a third person. See Restatement of Torts (2d) § 302A and § 302B. Under normal circumstances a person may reasonably assume that no one will violate the criminal law. Restatement, *supra,* § 302B, Comment *d.*

Neither is this a case involving circumstances such as those involved in *Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840 (1965), also cited by plaintiff, in which it was alleged that defendant left a car with keys in the ignition on its used car lot and that the car was then stolen by a thief who negligently drove it into the plaintiff. In that case we reversed the granting of a demurrer to the complaint in order to allow

plaintiff an opportunity, if he could, to offer evidence that because of the neighborhood, the type of clientele attracted to its used car lot or because of other circumstances, the defendant could reasonably foresee that the car would be stolen from its used car lot if keys were left in the ignition.

This case, however, was not decided on demurrer and, in our judgment, no comparable evidence was offered by the plaintiff in this case. Plaintiff has also not cited to us any case in which, under similar facts, a defendant has been held liable to the holder of stolen and forged checks.[2]

Under these facts and circumstances we affirm the judgment of involuntary nonsuit.

[2] See generally, White and Summers, Uniform Commercial Code (1972 ed) 537-39, § 16-6. Cf. Gresham State Bank v. O & K Con. Co., 231 Or 106, 370 P2d 726, 372 P2d 187 (1962).