618 P.2d 418 (1980)
289 Or. 737
Coral Jean RICHARDS, Petitioner,
v.
Royal A. DAHL and Winnifred V. Dahl, Husband and Wife, Jack Fawcett and Virginia Fawcett, Husband and Wife, and Warren R. Dahl, Dba Virwin, Respondents.
CA 13885; SC 26840.
Supreme Court of Oregon.
Argued and Submitted June 24, 1980.
Decided October 21, 1980.
*419 Jossi Davidson, Silverton, argued the cause and filed the briefs for petitioner.
Paul J. Lipscomb, Salem, argued the cause for respondents. With him on the brief were Ron P. MacDonald and Blair, MacDonald, Jensen & Lipscomb, Salem.
Before DENECKE, C.J., and TONGUE, HOWELL, LENT, LINDE and PETERSON, JJ.
DENECKE, Chief Justice.
Plaintiff, defendants' tenant, brought this action for damages for the death of her infant son who was killed in a fire in plaintiff's apartment caused by an allegedly defective wall heater in that apartment. The trial court held there was no issue of fact and granted defendants' motion for a summary judgment and entered judgment for defendants. The Court of Appeals affirmed without opinion. 43 Or. App. 691, 604 P.2d 460 (1979). We reverse.
We have previously stated that the principles announced in the Restatement of Torts (Second) reflect our views of the law governing the liability of a landlord to a tenant. Lapp v. Rogers, 265 Or. 586, 588, 510 P.2d 551 (1973). Section 358 of the Restatement provides that a landlord is liable if he fails to disclose to his lessee any condition which involves an unreasonable risk of harm if (a) the lessee has no reason to know of the condition or risk and (b) the lessor has reason to know of the condition and should realize the risk involved and has reason to expect that the lessee will not discover the condition or realize the risk.
The parties agree that the crucial point in this case is whether there was any evidence that the defendant lessors should have known of any unreasonably dangerous condition.
In considering the motion for summary judgment the trial court had the complaint, depositions of the plaintiff, defendant Royal *420 Dahl, and the plaintiff's expert, and the affidavits of plaintiff and of Royal Dahl. From these documents the following facts appear: The heater was located in a recess in the wall. When defendants purchased the apartment building in 1973 the heater was inoperable as a previous landlord had disconnected it in 1963 after having it installed in 1962. Defendant Royal Dahl, who managed the apartment, did not try to use the heater until 1976 when it would not function. Dahl called an electrician who got it operating by replacing a fuse. Later that year it again would not function and the electrician called by Dahl remedied that by closing the circuit breaker. (It is not clear why a fuse was replaced in one instance and a circuit breaker closed in the other.) No cleaning or maintenance was performed on the heater while the defendants owned the apartment.
In September 1977 plaintiff and her son moved into the apartment. The fire occurred in November 1977. Prior to the fire plaintiff tried to operate the heater but it would not respond; therefore, she believed it inoperable and moved a dresser to within four inches of the heater. The dresser "overlapped the * * * heater by one half." On the evening of the fire plaintiff put her child down for a nap and went to another apartment to visit. She was gone about 30 minutes when someone yelled "fire." At some time before this, unknown to the plaintiff, the heater was turned on, probably by another tenant putting in another fuse. The fuse box was located outside plaintiff's apartment and was accessible to anyone in the building. The heater caused the wall in which it was located to ignite or it ignited fabric materials in front of or in direct contact with it.
The most obvious danger was the presence of the dresser next to the heater; however, the evidence available upon the motion was that this did not cause the fire.
Plaintiff alleged that defendants provided her with an unreasonably dangerous heater in that "The heater appeared to be inoperable but could be activated without plaintiff's knowledge either spontaneously or by persons outside of Plaintiff's apartment."
Defendants first contend that if the facts alleged were proven, such facts do not create an unreasonably dangerous condition. We conclude there was evidence that the condition created was unreasonably dangerous.
No photographs or any detailed testimony about the nature of the heater are in the record. From what is in the record we infer that the device produced heat by electricity being sent through wires which caused them to become red hot. If materials capable of ignition were close to the heater they could catch fire and there is evidence this is what occurred. The materials were either the wall materials or transient materials which came close to or in contact with the heater. When an operable heater is capable of such destruction, a tenant will have to use care in keeping materials capable of ignition from the proximity of the heater and in checking that no such materials are in the vicinity of the heater before leaving a helpless infant alone in the apartment when the heater is operating. If the heater is incapable of operating, these precautions need not be taken. For these reasons we regard providing a heater capable of being put into operation without the knowledge of the plaintiff, who believed the heater incapable of operation, as maintaining a condition which could involve an unreasonable risk of harm.
Plaintiff did not know the heater was operable. She did not expressly communicate this belief to defendants. The defendant Royal Dahl testified he did not know that the heater was inoperable; rather, he believed that it could be operated by a thermostat in plaintiff's apartment, and he did not know that plaintiff believed it was inoperable.
We are of the opinion that there was an issue of fact whether Royal Dahl should have known that plaintiff believed the heater inoperable. After plaintiff had occupied the apartment Dahl had been in the apartment "on a few occasions." He "was always watching out for a fire hazard, it *421 worried me." He did not deny seeing the dresser, stating "there might have been" one there; he could not recall. In November, placing a wooden dresser four inches from a heater of this kind can certainly create an inference that the person who placed the dresser was unaware that the heater might be placed in operation without the occupant's knowledge.
The defendants contended:
"Moreover, plaintiff's own fire expert testified that a dresser four to six inches away from the heater could not have caused the fire to break out in the manner plaintiff postulates. (Anderson deposition at 28). It is therefore difficult to understand how defendants, as laymen, should have been aware of a fire hazard which was not apparent even to plaintiff's own fire investigator. * * *."
That the placement of the dresser four inches from the heater could not have caused this particular fire is not relevant to the issue of whether Dahl knew plaintiff believed the heater inoperable. Plaintiff's expert did not state that the placement of the dresser was not an apparent fire hazard; he stated in effect that placing the dresser next to this heater did not cause this particular fire.
Defendants also contended in their motion for summary judgment that plaintiff's complaint failed to state a cause of action. A motion for summary judgment is not the appropriate procedure to raise this issue; it should be raised in a responsive pleading or motion to dismiss, ORCP, Rule 21 A. However, as this issue can be raised for the first time as late as on appeal, we will consider defendants' contention.
When the issue, however, is not raised by a responsive pleading or a motion to dismiss, it is judged by something more than the allegations of the complaint. In Fulton Ins. Co. v. White Motor Corp., 261 Or. 206, 219, 493 P.2d 138 (1972), the court stated:
"We hold that where the defect in a pleading, even though material, consists of a mere omission to state a necessary fact, and it appears that the omitted fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. If we can determine that the omission did not result in surprise or prejudice, or prevent a full trial of the real issues between the parties, and that the evidence disclosed the existence of a cause of action, we will not reverse, but will treat the case as though the question had been raised at the proper time and the pleadings amended accordingly. * * *."
In Spears v. Huddleston, 265 Or. 168, 508 P.2d 438 (1973), we extended this principle to a situation in which the defendant attacked the sufficiency of the pleading for the first time at the close of the evidence by moving to withdraw the claim made by the pleading from the jury because it failed to state facts constituting a cause of action.
We stated:
"In Fulton we held (at 219, 493 P.2d at 145) that where a defect in a pleading, even though material, consists of an omission to state a necessary fact and it appears that the necessary fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. From the standpoint of surprise or prejudice, however, we fail to see any basis for distinction between a party who waits until appeal before attacking the sufficiency of a pleading and a party who does not challenge the sufficiency of a pleading by demurrer or objection to evidence, but waits until all of the evidence is in and both sides have rested before challenging the sufficiency of the pleading. We therefore hold that such a party stands in the same position as one who attacks the sufficiency of the pleading for the first time on appeal, insofar as the question of surprise or prejudice is concerned. * * *. 265 Or. at 178-179, 508 P.2d at 444-445.
The primary reasoning behind these decisions is that when evidence has been received, *422 that evidence, rather than the allegations of the complaint, should determine whether the party has presented a cause of action. The pleading is a summary or outline of what the party expects to prove. The proof itself, not the summary, should determine whether the party has a cause of action.
All the evidence is usually not presented at the motion for summary judgment; however, the moving party must introduce enough evidence to prove there is no genuine issue of any material fact "and that the moving party is entitled to a judgment as a matter of law." ORCP, Rule 47 C. If all the evidence on one material element of the cause of action is favorable to the moving party and there is no issue of fact on this material element, the moving party is "entitled to judgment as a matter of law." Because this is the procedure on motions for summary judgment, whether the plaintiff has stated a cause of action should be decided upon the basis of the evidence considered in passing on the motion, not the allegations of the complaint. We have already decided that there was evidence of all the elements plaintiff must prove to make a cause of action. The trial court erred in entering judgment for defendants.
Reversed and remanded.
LENT, Justice, concurring.
I concur in the majority opinion but wish to add two thoughts not covered therein.
My recollection is, and my notes show, that one of the reasons we allowed review in this case was because of a general impression shared by the members of this court that trial courts were overusing summary judgment procedure in disposing of actions for damages for alleged negligence.[1] Given our opinion in Stewart v. Jefferson Plywood Co., 255 Or. 603, 469 P.2d 783 (1970),[2] which indicates that this court believes that it is the rare negligence case which should be taken from the jury to hold for either plaintiff or defendant as a matter of law, I believe a trial judge should be just as cautious in disposing of negligence cases by summary judgment without jury intervention as the judge must be at the close of evidence in a jury trial. This court has so held in Uihlein v. Albertson's, Inc., 282 Or. 631, 580 P.2d 1014 (1978). Since my recollection is that that belief was shared by other members of the court and served as one of the bases for allowing review, I had hoped that the opinion of the court would address that matter.
I write separately, also, to express a caveat. The court notes that in Lapp v. Rogers, 265 Or. 586, 588, 510 P.2d 551 (1973), this court adopted the principles of 2 Restatement (Second) of Torts, § 358. Since that case was decided, the legislature has abolished the "doctrine of implied assumption of the risk." ORS 18.475(2); Or. Laws 1975, ch. 599, § 4. This court is not faced in this case with determining whether § 358 carries with it some of the trappings of implied assumption of risk. If it does, I do not understand that the court, by the reference to that section, intends to diminish the effect of that legislative abolishment by the decision in this case. Compare the back *423 door intrusion of assumption of risk embodied in 2 Restatement (Second) of Torts, §§ 343 and 343A. See Shepler v. Weyerhaeuser Company, 279 Or. 477, 495, 569 P.2d 1040 (1977). I do not at this point take a position that § 358 does introduce the concept of assumption of risk; I merely express the opinion that it is arguable that the section does that. If it does, it seems clear to me that this court could no longer analyze the liability of landlord to tenant under that section.
NOTES
[1] An examination of the record on appeal in this case discloses that the trial judge did not yield to any temptation to dispose of this case in a manner requiring less judicial time than a trial would, for he obviously spent many hours in arriving at decision.
[2] We have since indicated the continuing vitality of the policy espoused in Stewart v. Jefferson Plywood Co., 255 Or. 603, 469 P.2d 783 (1970), in several decisions: Allen v. Shiroma/Leathers, 266 Or. 567, 514 P.2d 545 (1973); Fred Meyer, Inc. v. Temco Met. Prod., 267 Or. 230, 516 P.2d 80 (1973); Sabolish v. Playland Shows, Inc., 267 Or. 339, 516 P.2d 1271 (1973); Cutsforth v. Kinzua Corp., 267 Or. 423, 517 P.2d 640 (1973); McEwen v. Ortho Pharmaceutical, 270 Or. 375, 528 P.2d 522 (1974); Kirtland v. Davis, 276 Or. 613, 555 P.2d 1262 (1976); Jacobs v. Tidewater Barge Lines, 277 Or. 809, 562 P.2d 545 (1977); Katter v. Jack's Datsun Sales, Inc., 279 Or. 161, 566 P.2d 509 (1977); Thomas v. Inman, 282 Or. 279, 578 P.2d 399 (1978); Uihlein v. Albertson's, Inc., 282 Or. 631, 580 P.2d 1014 (1978); Kirby v. Sonville, 286 Or. 339, 594 P.2d 818 (1979); Welch v. U.S. Bancorp, 286 Or. 673, 596 P.2d 947 (1979); and Arp v. Kerrigan, 287 Or. 73, 597 P.2d 813 (1979). See, also Vetri, "Tort Markings: Chief Justice O'Connell's Contributions to Tort Law," 56 Or.L.Rev. 235, 238 to 242.