Joseph E. ROMAIN, et al., Appellants,

v.

PEBBLE CREEK PARTNERS, et al., Respondents,

The Griffin Companies, Inc., Respondent,

Raymond F. Vavrosky Realty, Respondent.

No. 51380.

Supreme Court of Minnesota.

Sept. 18, 1981.

Stuurmans & Kelly and Timothy D. Kelly, Minneapolis, for appellants.

Faegre & Benson, Jerry W. Snider and Betsy L. Taylor, Minneapolis, for Pebble Creek Partners.

Larkin, Hoffman, Daly & Lindgren and Joseph W. Anthony, Minneapolis, for The Griffin Companies, Inc.

Peter I. Orlins, Richfield, for Vavrosky Realty.

**SIMONETT, Justice.**

In this declaratory judgment action the district court found a purchase agreement was not governed by the notice of contract cancellation requirement of Minn.Stat. § 559.21 (1978) and that the agreement came to an end by its own terms. In addition, the trial court awarded sellers, as the prevailing parties, their deposition expenses as taxable costs. Purchasers appeal from these two rulings. We affirm.

Pebble Creek Partners bought an apartment complex in Brooklyn Park, made improvements, and put it on the market for sale. Joseph E. Romain and Michael T. Murray were interested in buying. All parties involved were experienced real estate entrepreneurs. After negotiations, a real estate purchase agreement was prepared, revised, then signed.

The purchase agreement is dated February 25, 1979, but was signed on or about February 17, 1979. The first paragraph describes the property and acknowledges receipt of $5,000 earnest money, the second paragraph sets out the purchase price and terms of payment, and then follow 21 numbered paragraphs dealing with various terms of the transaction.

The purchase price was $4,100,000 payable as follows: $1,000,000 in cash at closing, including the earnest money; $2,675,-000 by buyers assuming a first lien mortgage on the premises; and the balance of $425,000 by a note bearing 7½% interest, payable monthly, starting November 5, 1979, with the entire balance due October 1, 1989. The agreement goes on to say—and this is the critical part on this appeal:

Said note shall be secured by security other than the subject property, such security to be satisfactory to seller and

determined within thirty (30) days of the date hereof; or in the event agreement is not made, then this agreement shall be null and void, all earnest money shall be refunded and each party relieved of any liability hereunder.

From the testimony it appears that the $1,000,000 cash payment at closing was intended by sellers to cover their improvement costs and that the $425,000 note would represent their profit on the transaction.

The purchase agreement called for a closing on October 5, 1979, at which time buyers would be given a warranty deed. Another paragraph provided the parties would agree to certain items of construction to be completed by sellers by July 1, 1979, at which time buyers would deposit another $20,000 earnest money. If the items were not agreed on nor timely completed, then "the offer shall be null and void, at the option of buyers."

The parties never did agree on satisfactory security for the $425,000 note. The first 30 days after the signing of the purchase agreement went by with no security offered by Romain and Murray and, indeed, no discussion between the parties about it. The 30-day period expired on March 17, 1979, and sellers claim the agreement was, as of then, null and void by its terms. Buyers claim, however, that time was not of the essence and that all deadlines in the agreement were loosely followed by both sides. Thus buyers point out that negotiations on security for the note took place after March 17 and these negotiations constituted a waiver of the "null and void" clause. Sellers countered these later negotiations were simply an effort to arrive at the terms of a new purchase agreement, not a recognition of the continued existence of the original agreement. Buyers claim they did, at least by April 25, propose to Jan H. Susee, the partner serving as spokesman for Pebble Creek Partners, several properties as security for the note. Susee, on the other hand, says the proposal was undocumented, tentative and inadequate.

Also, July 1 came and went without payment by buyers of the $20,000 additional earnest money. It appears there never was any agreement on what items had to be completed by July 1. The buyers claim the items to be completed were not completed, so the $20,000 did not have to be paid. Sellers claim there was satisfactory compliance on their part.

In any event, on August 28, 1979, Susee wrote a letter to Romain and Murray stating buyers were "in default" and "pursuant to the terms of the Purchase Agreement, we understand that because of the failure to approve the security within the thirty (30) days provided in the agreement, that the agreement is now void and that no further action is necessary." The buyers, however, took the position the agreement was still in force and could not be cancelled without a formal notice of cancellation pursuant to statute. Minn.Stat. § 559.21 (1978). The broker offered to refund the buyers their $5,000 earnest money if buyers would sign a memorandum of cancellation. This buyers refused to do. Sellers have never served a cancellation notice.

To resolve the standoff, Romain and Murray brought this declaratory judgment action. The parties seem to agree the property has increased substantially in value over the agreed purchase price.

The trial court decided in favor of sellers. It found there had been no waiver of the null and void provision of the agreement; that whatever work had to be completed by the designated time was done by the sellers; that buyers failed to make the additional $20,000 earnest money payment; and that buyers had failed to provide reasonably satisfactory security for payment of the $425,000 note. The court concluded the contract cancellation notice was not applicable to this purchase agreement and, consequently, that the agreement was void by its terms.

We hold the trial court's factual findings are not clearly erroneous and they are affirmed. This means it is established that the parties never did agree to what would be satisfactory security for the note and that sellers did not waive the provision in the agreement that failure to provide such security rendered the agreement null and void. We need not decide if the deadline for agreeing on the security was March 17, 1979, or if the sellers extended the time, since even if extended, there was never any compliance.

This brings us to the main issue: Does the contract for deed cancellation statute apply to this real estate purchase agreement? Minn.Stat. § 559.21 (1978) provides in relevant part:

> When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser * * * a notice specifying the conditions in which default has been made, and stating that such contract will terminate * * * 30 days after the service of such notice * * *. Such notice must be given notwithstanding any provisions in the contract to the contrary * * *.[1]

Unquestionably, the statute applies to a contract for deed. While there is no definitive definition of a contract for deed, its main characteristics are well known: vendor and vendee are bound to sale and purchase by definite terms; the vendee usually takes possession; and the contract works an equitable conversion, the vendor retaining legal title and the vendee having equitable title. The statute was passed to protect the vendee, particularly in situations where the vendee was in possession, time of performance was made the essence of the contract, and a failure by the vendee to perform timely would work a forfeiture of the vendee's interest. *Robitshek Investment Co. v. Wick,* 171 Minn. 127, 129, 213 N.W.

---

1. We have quoted the statute as it read in 1979, when the events here took place. That language has remained unchanged since its 1913 enactment. The 1980 legislature amended Minn.Stat. § 559.21, particularly by adding a form of notice provision and enlarging the time for compliance depending on the amount of the purchase price paid, but left the other language quoted above unchanged.

551, 552 (1927). *See also Graceville State Bank v. Hofschild*, 166 Minn. 58, 62, 206 N.W. 948, 949–50 (1926) (purpose of statute is to ameliorate the harsh forfeiture rule of the common law and remove grounds for dispute).

On the other hand, the application of the statute to purchase agreements is less clear, perhaps because the distinction between contracts for deed and purchase agreements is similarly unclear. A purchase agreement (or earnest money contract) often is a preliminary contract "to bind the bargain" until the closing, at which time possession is delivered and title is passed by deed or contract for deed. The purchase agreement frequently is conditioned on certain material terms respecting title or financing being satisfied in the interim period before closing.

Minn.Stat. § 559.21 (1978) does not distinguish between contracts for deed and purchase agreements. It simply says it applies to "any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same."

This language is broad enough and plain enough to include purchase agreements. Appellant buyers point out section 559.21 was amended by 1980 Minn.Laws, ch. 373, § 6, to require the cancellation notice to read, "This notice is to inform you that by this notice the seller has begun proceedings under Minnesota Statutes, section 559.21 to terminate your *contract for deed * * *"* (emphasis supplied). The notice language also refers to "mortgage registration tax," "right to possession" and "eviction." Respondent sellers argue these 1980 amendments show the legislature intended the statute not to apply to purchase agreements. We think this argument claims too much. Even with the amendments, section 1 still provides the notice requirements are to govern for "any contract for the conveyance of real estate or any interest therein * * *." Without clearer evidence that the legislature intended to abandon this broad statutory reach, we cannot say that the strengthening of the notice requirement was intended to reduce the scope of the statute's protection.

A review of our case law indicates the test for applicability of the statute is not whether the contract is a "contract for deed" or a "purchase agreement." The test remains, as the statute puts it, whether there is "any contract for the conveyance of real estate or an interest therein * * *." It is the nature of the parties' agreement, not its label, which is determinative. It is helpful to look at three cases where we held notice was not required and two cases where we held it was.

Notice was not necessary in *Chapman v. Salem Lutheran Church*, 301 Minn. 486, 221 N.W.2d 129 (1974); *Liebsch v. Abbott*, 265 Minn. 447, 122 N.W.2d 578 (1963); and *Joslyn v. Schwend*, 85 Minn. 130, 88 N.W. 410, 744 (1901). In *Joslyn* a purchase agreement stated if title could not be made good in 60 days, the agreement was void. Subsequently an event occurred, through no fault of the seller, making title unmarketable. We honored the parties' intent and held the agreement ended by its terms without need for a cancellation notice, saying the statute applied "only to contracts of actual purchase, and not to agreements, which, in their nature, are mere options depending upon some contingency." In *Liebsch*, we said by way of dicta that the seller had not shown the purchase agreement was one to which the statute applied, since the buyer's performance "was wholly dependent upon a contingency, that of obtaining a $20,000 mortgage loan * * *," and that "[u]nless such loan was obtained, performance of the purchase agreement could not be required by either party." *Id.*, 265 Minn. at 456, 122 N.W.2d at 584. In *Chapman*, most recently, we dealt with the typical earnest money contract for the sale of a home containing a clause that if the buyers could not obtain a mortgage, the contract was void; we held the cancellation notice statute did not apply.

Two cases holding the cancellation notice statute did apply are *Ballard v. Friedman*, 151 Minn. 493, 187 N.W. 518 (1922), and *Finnes v. Selover, Bates & Company*, 102 Minn. 334, 113 N.W. 883 (1907). In *Finnes*

the buyer failed to make payments to seller on two contracts, each of which provided that in such a case it was null and void. We held the contracts were "contracts of purchase," that both parties "were bound by the terms thereof," and consequently that the seller had to give the statutory notice. *Ballard* dealt with a purchase agreement of a theater; the purchase price was $65,000 with $10,000 earnest money and the balance at closing payable $30,000 in cash and $25,000 by assumption of a mortgage in that amount. The seller was to operate the theater for the buyer until closing. The contract said time was of the essence and if the $30,000 cash was not paid at the closing date and time, the contract ended. The buyer was late with his $30,000 cash, but we held the contract was "one of purchase and sale" and could only be terminated by the seller's giving the statutory notice.

In the case before us, the parties each take language from our prior cases favorable to their position. Thus appellants argue we have a "contract for the conveyance of real estate," which requires statutory notice to terminate. They point out the purchase agreement is a carefully drafted document and calls for a warranty deed at closing. Respondents, using *Liebsch* and *Joslyn* language, argue the purchase agreement is wholly dependent upon a contingency, that it is like an option, and that it is a contract where the vendor does not have the right to terminate because the contract automatically terminates. Respondents argue the contingency is a condition subsequent; that a condition is something out of the control of the parties, unlike a covenant for breach of which specific performance will lie; and that breach of a condition cannot occur since the condition simply does not exist. Appellants counter by saying that, if true, this is a loophole for clever drafters; that a condition where the seller has control of the contingency is not a condition at all, but a covenant.

The test, it seems to us, still remains whether the agreement is a contract for the conveyance of real estate or any interest therein. This means a contract where both

parties are bound by its terms. *Finnes*, 102 Minn. at 336, 113 N.W. at 883. And ordinarily it must be a contract where, as *Liebsch* says, either party can require performance by the other. In other words, the agreement must be sufficiently certain and complete in its essential terms that ordinarily specific performance will lie. For example, when the parties have left open an essential term for further negotiations, the court declines to make a contract for the parties and specific performance will not lie. *Cf. Dial Toaster Corporation v. Waters-Genter Company*, 181 Minn. 606, 233 N.W. 870 (1930). Whether the contract comes within Minn.Stat. § 559.21 (1980) is not dependent on how the parties may have manipulated the contract language. Rather, looking at the intent of the parties and the substance of the overall agreement, the inquiry is whether a term essential to the final bargain is left open for further negotiations or is dependent on a contingency. The trier of fact "must consider the transaction as a whole in light of the then-existing circumstances in order to ascertain the true nature of the relationship that was thereby created." *Wurdemann v. Hjelm*, 257 Minn. 450, 457, 102 N.W.2d 811, 816 (1960).

Here it seems to us there was an essential term left open. In their purchase agreement the parties agreed to negotiate on satisfactory security for the note in the interim period before closing. Agreeing on security for the note was a contingency for completion of the contract itself, a contingency on which the contract was wholly dependent. Agreement on the security was intended to be an essential term of the contract, for it assured payment of the $425,000 note, which represented sellers' sole expected profit. Having required only $5,000 earnest money on a $4.1 million property, the parties left open for further negotiation the security to be given for the note but put a deadline on those negotiations (perhaps extended, but a deadline nevertheless), after which, if no agreement was reached, the purchase agreement was void and the earnest money was to be returned.

We hold, therefore, this purchase agreement was not finally binding on both

parties in all its essential terms; that it became null and void by reason of the parties' not reaching agreement on security for the note; and, consequently, that notice under section 559.21 to terminate the purchasers' interest was not needed.

This leaves, we recognize, some uncertainty in the application of section 559.21, which the prudent counselor will have to take into account. Nevertheless, we believe what we have said here is consistent with the statute as the legislature has given it to us and with our prior decisions and that it affords a measure of needed flexibility in the use of earnest money purchase agreements.

### Taxable Costs

The trial court awarded seller-respondents costs and disbursements of approximately $2,700 for deposition expense. Appellants challenge this award, arguing that such costs are not "necessary" within the meaning of Minn.Stat. § 549.04 (1980). This is the only guideline provided by the statute, namely, that the prevailing party "shall be allowed his disbursements necessarily paid or incurred."

Not until the advent of the Rules of Civil Procedure some 30 years ago did the use of discovery depositions become prevalent, yet this is the first opportunity we have had to deal with the question of allowing deposition costs as a taxable disbursement. We have said, however, as long ago as *Salo v. Duluth & I. R. R. Co.*, 124 Minn. 361, 364, 145 N.W. 114, 115 (1914), that allowance of disbursements as necessary "[t]o a large extent * * * involves an exercise of discretion and judgment" on the part of the trial judge. In *Salo*, we denied the cost of a trial transcript, acknowledging it was useful, but observing it would add to the cost of litigation and lead to abuse.

The federal statute, 28 U.S.C. § 1920(2) (1976), allows taxation of "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." Under this more explicit language, some federal courts have taken a more generous view with respect to taxing depositions. Yet others have cautioned that the trial judge's discretion "should be sparingly exercised," *Chemical Bank v. Kimmel*, 68 F.R.D. 679, 681 (D.Del. 1975), and that depositions "merely useful" should not be taxed, *Independent Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678 (9th Cir. 1963), *cert. denied*, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165. The Eighth Circuit in *Koppinger v. Cullen-Schiltz & Associates*, 513 F.2d 901, 911 (8th Cir. 1975), recognized that the expense of depositions not used at trial could be taxed if they were reasonably necessary to the case and not "purely investigative" in nature. The court of appeals emphasized the bill of costs should always be given "careful scrutiny." However, the trial court has wide discretion in taxing costs and will be reversed only for abuse of that discretion.

Use of the discovery deposition is commonplace today. In many cases, conscientious counsel can prepare for trial in no other way. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). At the same time, it is not unknown for a case to be overdeposed, both as to the persons examined and the length of the examinations. *See, e. g.*, Brazil, *Civil Discovery: Lawyers' Views of its Effectiveness, Principal Problems and Abuses*, 1980 Am. Bar Foundation Res. J. 789 (1980). There are occasions when interrogatories, requests for admissions, stipulations and exchange of reports would work just as well. There is still merit in the sentiments expressed by us in *Salo* that allowing costs, especially for discovery depositions, adds to the cost of litigation and may lead to abuse. Appellants here make the further argument that allowing depositions to be taxed as a matter of course may chill meritorious litigation. We agree to the extent that, as a general matter, courts should be reluctant to expand the list of costs taxable to a losing party. *See Shterk v. Veitch*, 135 Minn. 349, 352, 160 N.W. 863, 864 (1917).

■ Having said this, we think the rule should be, and we so hold, that the awarding of deposition costs to the prevailing

party lies within the sound discretion of the trial judge. Deposition costs may include the cost of taking the originals and the cost of copies of depositions taken by either the prevailing or losing party.

The trial judge should, however, take a hard look at costs claimed. The judge is familiar with the needs of the case, its importance and the strategies involved and is in the best position to judge what is truly necessary and what is only useful. Depositions or parts thereof which are cumulative or duplicative or taken on peripheral issues, or depositions taken when the information could have been obtained in some other less burdensome or expensive way, ordinarily will not be considered necessary. Thus each case is unique. The burden is on the prevailing party to show both that the depositions and copies were necessary to the conduct of the litigation and that they were effectively and pertinently used by the prevailing party.

Here the trial court found defendants' deposition expenses to have been necessarily incurred, and we hold this was a proper exercise by the trial court of its discretion.

Affirmed.