**UNBANK COMPANY, Appellant,**

**v.**

**Charlean
WHITTAKER–GOMEZ, Defendant,**

**CHART/McKnight, Respondent.**

No. C5–88–2232.

Court of Appeals of Minnesota.

April 11, 1989.

Michael J. Majeski, Minneapolis, for appellant.

John D. Docken, Doherty, Rumble & Butler, St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

UnBank Company appeals a district court judgment reversing a conciliation court award in favor of UnBank. UnBank sought reimbursement from CHART/McKnight (Chart) and three individual defendants for seven forged checks from Chart's account that UnBank paid. We affirm.

## FACTS

Chart is a nonprofit organization that provides career development services to disadvantaged women. Among other services, it makes no-interest loans to qualified women.

In March 1987 Atlanta Thomas, Chart's office coordinator, began her forgery scheme. She would prepare fictitious loan application forms to create a file. Then she would send the bogus files to the loan committee, which reviewed files with the applicant's names deleted to ensure anonymity. If the loan committee approved the file, Thomas would prepare a check and forge the signature of Carolyn Bye, Chart's executive director. Beth Toso, Chart's bookkeeper, entered the forged checks on the ledger. All of the forged checks were made out to single payees, although Chart regularly made its loan checks out to two payees, except in the most unusual circumstances.

Chart did not discover the scheme during the monthly bank reconciliations because the forged checks corresponded to entries in the ledger and the account balance was not unusually low. The account balance was eventually depleted, and on May 14 Norwest Bank sent a notice of overdraft. Chart investigated and discovered the scheme.

UnBank is a business which, among other services, cashes checks for a percentage of the face amount. It keeps registration cards of its customers on file which contain information about the customer's physical characteristics, signature, address, employment and the like. The cards also show a record of checks cashed for the customer and whether the checks were honored or dishonored by the drawee bank. If a customer has a good record of cashing checks from a particular source, UnBank will not call the drawer to verify a check.

UnBank was first presented with a Chart check on October 8, 1986. The check was made out to two payees. UnBank called Chart to verify the check, but there was no one at the Chart office to verify. Atlanta Thomas happened to be at UnBank at the time. UnBank knew that Thomas worked for Chart because Thomas, as an UnBank customer, had a registration card on file. UnBank had Thomas add her signature to the check. UnBank cashed the check and it was honored by Norwest, the bank on which it was drawn.

UnBank was not presented with another Chart check until April 4, 1987, when the first of the forgeries began to appear. Despite the single payee on the check, UnBank did not call Chart for verification. This check, as well as 22 subsequent forged checks, were cashed by UnBank and honored by Norwest. Beginning with checks presented to UnBank on May 14, Norwest began dishonoring the checks and returned ten checks totaling $4,500 to UnBank on the basis of a "stop payment" order by Chart.

UnBank sought reimbursement in conciliation court from either Chart or the three individual defendants who were the payees on the forged checks, and judgment was rendered in its favor. Upon appeal and trial de novo in district court, the judge reversed the conciliation court judgment.

The district court found that Chart was not negligent in a way that substantially contributed to the making of the forged signatures and that UnBank did not pay the checks according to reasonable commercial standards. Chart therefore was able to assert the defense of unauthorized signature.

## ISSUES

1. Did the trial court clearly err in finding that Chart was not negligent in a way that substantially contributed to the forgeries so as to preclude it from raising an unauthorized signature defense?

2. If Chart was negligent and UnBank not a holder in due course, did the trial court clearly err in finding that UnBank did not pay the checks according to reasonable commercial standards?

## DISCUSSION

UnBank made no motion for amended findings or a new trial. The reviewing court therefore is limited to ascertaining whether the evidence sustains the findings and the findings sustain the conclusions of law. *Liebsch v. Abbott,* 265 Minn. 447, 456, 122 N.W.2d 578, 585 (1963). Evidence on appeal will be viewed in the light most favorable to the prevailing party. *Theisen's, Inc. v. Red Owl Stores, Inc.,* 309 Minn. 60, 66, 243 N.W.2d 145, 149 (1976). Unless shown to be clearly erroneous, the findings should not be set aside. Minn.R. Civ.P. 52.01. If one finding is sufficient to support the judgment, errors on other findings will not matter. *Liebsch,* 265 Minn. at 457, 122 N.W.2d at 585.

## I

The trial court held that Chart was not negligent in a way that substantially contributed to the unauthorized signature. We agree. This finding allowed Chart successfully to assert the unauthorized-signature defense under Article Three of the Uniform Commercial Code. This defense provides:

Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless the named person ratifies it or is precluded from denying it. Minn.Stat. § 336.3-404(1) (1988).

A drawer of a check cannot use the unauthorized-signature defense against a holder in due course if the drawer's negligence "substantially contributed" to the unauthorized signature. Minn.Stat. § 336.3-406 (1988). The same is true against a "drawee or other payor," except that the drawee or other payor, unlike the holder in due course, must have paid the instrument "in accordance with the reasonable commercial standards of the drawee's or the payor's business." *Id.*

■ The burden of proof is on the drawee, payor or holder in due course to prove the negligence of the drawer who asserts the unauthorized-signature defense. *See Reiter v. Western State Bank of St. Paul,* 240 Minn. 484, 487, 62 N.W.2d 344, 346 (1953) (pre-code law); *Traveler's Insurance Co. v. Jefferson National Bank at Kendall,* 404 So.2d 1131, 1133 (Fla.App. 1981). UnBank asserts that Chart was negligent as a matter of law for not detecting the forgeries during its monthly account reconciliation with Norwest. If Chart had detected the forgeries during the April or early May reconciliations, the forgery scheme would have been detected before the dishonored checks were presented to UnBank. UnBank claims this is negligence as a matter of law, because the UCC imposes a duty on bank customers to detect forgeries during the monthly reconciliation. Minn.Stat. § 336.4-406(1) (1988).

Section 4-406 governs *only* the relationship between a bank and its customer, not as between a bank or its customer and a third party; it does not apply to a check-cashing service such as Unbank, and no duty to Unbank is imposed upon Chart by the section. Although section 4-406 has been used to establish negligence toward third parties, it is not negligence per se toward third parties. *See BBB Environmental Management Corp. v. Liberty Norstar Bank,* 122 A.D.2d 616, 617, 505 N.Y.S.2d 15, 16 (1986).

■ The evidence supports the trial court's finding that Chart was not negli-

gent. Chart conducted a background check on Atlanta Thomas before hiring her. The background check revealed that Thomas had previously worked in a loan program and had good references. Chart could reasonably assume that its employees would not violate the law. *See Chicago Heights Currency Exchange v. Par Steele Products and Service Co., Inc.,* 123 Ill.App.3d 1054, 79 Ill.Dec. 275, 277, 463 N.E.2d 829, 831 (Ill.App.1984) (employee forgery); *Fred Meyer, Inc. v. Temco Metal Products Co.,* 267 Or. 230, 516 P.2d 80, 83 (1973) (employee forgery).

The record also reveals that Chart's internal procedures were adequate. Chart is a small, nonprofit organization with limited resources. Chart's independent auditors did not require Toso to inspect the signatures on each check when conducting the bank reconciliations; the reconciliation procedure used was thus reasonable as it relates to UnBank.

The evidence, viewed in the light most favorable to the prevailing party, is sufficient to sustain the trial court's finding that Chart was not negligent. Chart is thus able successfully to assert the unauthorized-signature defense without any inquiry about whether UnBank is a holder in due course or whether it paid the checks according to reasonable commercial standards.

## II

 If Chart were negligent, UnBank, as a drawee, still could not recover. The trial court found, and we agree, that UnBank did not follow reasonable commercial standards.

The aptly named UnBank is not a bank. It cannot be held to the same reasonable commercial standards as a bank. A bank ordinarily cashes checks only for its own account holders. UnBank cashes checks for anyone, so it must be more wary of who presents it with a check. Also, UnBank, unlike a bank, keeps a percentage of the face amount of each check it cashes. The fee must cover the risk UnBank takes by cashing checks.

The trial court based its finding on UnBank's failure to call Chart for verification when the first forged Chart check was presented. That check had only one payee. The only previous check presented to Unbank had two payees. This should have alerted UnBank to inquire. Had it done so, it would have uncovered the forgery scheme well before the dishonored checks were presented.

UnBank claims, for the first time on appeal, status as a holder in due course. At no point do the words "holder in due course" appear in the trial court record. The trial court found that UnBank was a "drawee," and UnBank did not move for an amended finding. Therefore, UnBank is barred from raising that claim in this court.

## DECISION

Affirmed.