Argued and submitted March 20, reversed and remanded June 24, reconsideration
denied August 14, petition for review denied September 22, 1987 (304 Or 185)

SCHROEDER,
*Appellant,*

*v.*

NORTHROP SERVICES, INC.,
*Respondent.*

(A8311-07245; CA A38381)

739 P2d 33

J. Rion Bourgeois, Portland, argued the cause and filed the briefs for appellant.

John R. Faust, Jr., Portland, argued the cause for respondent. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, Allan M. Muir and W. A. Jerry North, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

---

* Joseph, C. J., *vice* Young, J.

### VAN HOOMISSEN, J.

■ Plaintiff brought this personal injury action against defendant under the Employers' Liability Act (ELA), ORS 654.305 *et seq.*[1] He appeals from a judgment of dismissal entered after a directed verdict against him. ORCP 60.[2] The issue is whether he presented sufficient evidence at trial that defendant had the right to control or actually exercised control as to the manner or method in which the risk-producing activity was performed. In determining the propriety of a directed verdict in this case, we view the evidence in the light most favorable to plaintiff, who is entitled to the benefit of every reasonable inference which may be drawn from it. *See Foster v. Schnell Refrigeration Co.,* 280 Or 411, 414, 571 P2d 497 (1977). We reverse.

Plaintiff worked as a chemist for the Environmental Protection Agency (EPA). He was assigned to do chemical analysis in EPA's facility at the Marine Science Center in Newport (MSC), which was located in space that EPA had leased from Oregon State University (OSU), MSC's parent. Defendant provided services to EPA at MSC.[3] Plaintiff's three co-workers in the lab, Killian, Boese and Stuart, were defendant's employes. They did the same kind of chemical analyses as plaintiff. They used the same equipment and chemicals, including a variety of toxic and carcinogenic solvents and priority pollutants. Killian developed the procedures used in the lab, which involved evaporating large quantities of solvents. That produced noxious chemical vapors which were expected to be removed by the lab's ventilation system.

Safety inspections of the ventilation system performed at EPA's request in 1979 and 1980 disclosed defects.

---

[1] Plaintiff alleges that defendant violated both the ELA and the Oregon Safe Employment Act (OSEA). ORS 654.001 *et seq.* However, his allegations in his second amended complaint only set out violations of the OSEA regulations as evidence of violations of the ELA.

[2] ORCP 60 provides, in relevant part:

"Any party may move for a directed verdict at the close of the evidence offered by an opponent. * * * A motion for a directed verdict shall state the specific grounds therefor."

[3] Under the same contract, defendant provided the same services to EPA at the OSU's Corvallis Environmental Research Laboratory, of which MSC is a satellite facility.

Baumgartner, Director of the Marine Division, Environmental Research Lab, testified that he was aware that the lab was not up to EPA standards. The defects were discussed at a Safety and Health Committee meeting on April 22, 1980, which Pettit, defendant's supervisor, attended. Betro, a Bendix Engineering Corporation health and safety consultant, inspected the lab for EPA in 1980. He noted defects in the ventilation system that he considered to be a health and safety problem. He advised against using carcinogens and priority pollutants in the lab at a committee meeting on September 22, 1980, which Pettit also attended. Louden, who succeeded Betro, inspected the facility between late 1980 and late 1982. She did not believe that there was a significant health or safety problem. Neither she nor the safety committees on which she served reported to defendant. Scott, defendant's safety officer, visited the lab in March, 1981, and conducted a "tissue test" of the ventilation hoods. In May or June, 1981, she conducted training on the handling of hazardous materials for defendant's employes.

After working in the lab, plaintiff and Killian complained to their respective supervisors about conditions there. Both suffered health problems, which they contended were due to the chemical vapors.[4] Plaintiff and his co-workers were tested. Plaintiff was diagnosed as having abnormal liver function. His physician restricted him from work as a bench chemist, and he was reassigned to work in a different place. Plaintiff told Dr. Bardana that the ventilation in the lab was faulty and inadequate, that the space was not initially built for

---

[4] Plaintiff suffered from severe eczema, burning eyes, fatigue, skin reactions, nausea, depression and hair loss. Defendant argues that plaintiff has a long history of eczema, hives, hay fever, asthma and allergies. He moved from Illinois to Newport on his physician's advice that he relocate to the Pacific Northwest. Defendant also argues that plaintiff may have caused his injury by breathing the vapors that his own work produced and that he has not shown that it was only the vapors from defendant's employes' work that caused his injury. Those are fact questions for the jury. Furthermore,

"[w]hen, as the result of the activities of defendant's employes or use of his equipment, a risk of danger is created which *contributes* to an injury to plaintiff who is the employe of another engaged in work on the same project, defendant has been considered to have sufficient control over the work to be subject to the duties imposed by the Act. This is so even though he might not have had actual control over the specific activity in which plaintiff was engaged at the time of his injury." *Wilson v. P.G.E. Company, supra,* 252 Or at 391. (Emphasis supplied.)

use as a chemistry lab and that chemicals were stored in a defective refrigerator.

An investigation confirmed that the lab's ventilation system was defective, supervisory relationships within the lab were unclear, toxic substance use protocols had not been adopted and toxic substances were used outside of, and stored in, the ventilation hoods. A variety of short term solutions was immediately implemented. A clogged filter was removed from one of the hoods, the hoods were marked for proper sash opening, deflectors were put over the hood exhausts to direct them away from the lab's windows, the windows were caulked and the solvents and priority pollutants were removed from the lab. Later, EPA made other physical changes in the building.

Plaintiff filed a Workers' Compensation claim against EPA.[5] He also filed this ELA action against defendant, contending that defendant is his "indirect" employer under the ELA. At the close of his case, the trial court directed a verdict against plaintiff on the ground that he had failed to show the requisite control to subject defendant to liability under the ELA. The trial court found, *inter alia,* that EPA and defendant were working on a common enterprise, that their employes did the same work in the same place and that the employers' economic interests "were intertwined at least in the sense that [defendant] was to perform the work and being paid for performance of the work EPA wanted done." The court also found that defendant undertook to inspect the lab for the workers' safety and that plaintiff had complained to defendant about "the conditions and the environment of the lab." However, the court reasoned:

> "[I]f an indirect employer undertakes to inspect the direct employer's premises to make sure that they are safe, that does not relieve the direct employer from that responsibility. [T]o impose liability against an indirect employer on that basis would be not promoting the very goals that are desired by the Employers Liability Act, and that is a safe place for the worker."

The court concluded:

---

[5] Plaintiff is barred from filing a tort claim against EPA, his employer. ORS 656.018.

"It seems to me that these * * * factors * * * either do not bear significantly on the issue of responsibility or control or they indicate to me very strongly that the direct employer is the person who has maintained that responsibility and control. So based on those findings and that reasoning, the Court is going to allow the motion for directed verdict."

Plaintiff contends that he presented sufficient evidence on the issue of defendant's control for the issue to be submitted to the jury. He argues that the chemicals were the instrumentality that created the risk to him. Defendant argues that plaintiff presented *no* evidence that it had the right to control or exercised any control over the lab's ventilation system or the refrigerator, which it contends were the instrumentalities that caused plaintiff's injuries.

ORS 654.010 provides:

"Every employer shall furnish employment and a place of employment which are safe and healthful for employes therein, and shall furnish and use such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect life, safety and health of such employes."

ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

In *Helms v. Halton Tractor,* 66 Or App 890, 894, 676 P2d 347 (1984), *rev den* 297 Or 82, we explained:

"Under the ELA, those 'having charge of the particular work,' ORS 654.315, owe to 'employes or the public,' ORS 654.305, a duty of providing not only a safe place to work but also a duty to provide safe tools and other protective measures. *Thomas v. Foglio,* 225 Or 540, 564, 358 P2d 1066 (1961). The act has repeatedly been construed 'to apply to employes of a person other than the defendant, if their work requires

them to come within the risk of injury from defendant's instrumentalities.' *Blaine v. Ross Lbr. Co., Inc.,* 224 Or 227, 235, 355 P2d 461 (1960). Accordingly, the ELA can be the basis of a claim for relief for an injured worker suing a defendant other than his or her employer when that defendant retains a right to control or actually exercises control as to the manner or method in which the risk-producing activity is performed. *Miller v. Georgia-Pacific Corp.,* 294 Or 750, 754, 662 P2d 718 (1983); *Wilson v. P.G.E. Company,* 252 Or 385, 395, 448 P2d 562 (1968)."

■■ An indirect employer may be held liable when that employer and the direct employer are simultaneously engaged in a common enterprise, when the indirect employer retains the right to control the manner or method in which the work which caused the plaintiff's injury is conducted, or when the indirect employer actually exercises control over the manner or method in which the work is conducted. *See Sacher v. Bohemia, Inc.,* 302 Or 477, 483, 731 P2d 434 (1987); *Wilson v. P.G.E. Company, supra,* 252 Or at 391.

To hold defendant liable under the "common enterprise" test, plaintiff must prove (1) that his employer and defendant participated in a project of which defendant's operations were integral or component parts; (2) that the work involved a risk or danger to the employes or the public; (3) that plaintiff was an adopted or intermingled employe of defendant and (4) that defendant had charge of, or responsibility for, the activity or instrumentality that caused plaintiff's injury. *Sacher v. Bohemia, Inc., supra,* 302 Or at 487.

■ Plaintiff's evidence shows that defendant contracted with EPA to provide chemical analysis in the lab. Plaintiff worked with defendant's employes in conducting the chemical analyses envisioned under the contract. He and defendant's employes did the same kind of work, using the same equipment and chemicals that produced the same chemical vapors. That evidence is sufficient to satisfy the first and third elements of the common enterprise test. Plaintiff complained to defendant about the conditions and environment in the lab. He also has shown that the work involved a health risk to all four of the employes who worked in the lab. That evidence is sufficient to satisfy the second element of the common enterprise test. Defendant's employe developed the procedures used in the lab, and defendant undertook to inspect the lab for the

workers' safety. A jury could find that the chemical vapors, and not the ventilation system or the refrigerator, were the instrumentality that created the risk to plaintiff and his co-workers. That evidence is sufficient to satisfy the fourth element of the common enterprise test.

We conclude that plaintiff has offered sufficient evidence to raise a fact question whether defendant had a right to control or actually exercised control as to the manner or method in which the risk-producing activity was performed. That evidence was sufficient to raise a jury question whether defendant was liable under the "common enterprise" test, under the "right to control" test or under the "actual control" test. Therefore, the trial court erred in allowing defendant's motion for a directed verdict and in entering a judgment of dismissal.[6]

Reversed and remanded.

---

[6] Plaintiff also makes numerous assignments of evidentiary error relating to excluded testimony and exhibits. He requests that, if we reverse and remand, we determine the admissibility of each item. We decline to do so.