Argued and submitted March 13, affirmed June 19, reconsideration denied October 2, petition for review allowed November 26, 1991 (312 Or 525)

Kenneth A. KILGORE,
Personal Representative of
the Estate of Jodi Lynn Kilgore,
*Respondent,*

*v.*

PEOPLE'S SAVINGS & LOAN
ASSOCIATION,
and Lester Real Estate, Inc.,
*Appellants.*

(8803-31741; CA A61609)

814 P2d 163

Ralph C. Spooner, Salem, argued the cause for appellants. With him on the briefs were Ken L. Ammann and Spooner & Much, P.C., Salem.

John Paul Graff, Portland, argued the cause for respondent. With him on the brief were Charles Merten, Graff & O'Neil and Merten & Associates, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff brought this wrongful death action, alleging violations of Oregon's Residential Landlord and Tenant Act (RLTA), ORS 90.100 *et seq*,[1] and common law negligence. Defendants appeal the judgment in plaintiff's favor entered on a jury verdict. We affirm.

Plaintiff's decedent died in a fire on November 25, 1986, at a house owned by defendant People's Savings and Loan Association and managed by defendant Lester Real Estate, Inc. The house was leased on a month to month basis to four Eastern Oregon State College students. It had a wood stove. On the evening of the fire, decedent attended a party at the home and the stove was used. While the occupants were asleep, a stuffed chair, which had been left close to the stove, ignited. At the time the fire occurred, decedent was asleep in a bed on the second floor. The occupant of the room in which decedent was sleeping was awakened by the heat on the floor. He awakened decedent and, when he left the room to awaken the others, she was up and putting on her Levis. After he left the house, decedent's screams were heard. She died in the bedroom of smoke inhalation. None of the occupants heard a smoke detector go off.

Defendants first argue that the trial court abused its discretion in allowing plaintiff to introduce in evidence photographs of decedent's burned body. They argue that the photographs were not related to any issue in the case, because decedent died from smoke inhalation, not burning, and that the pictures were highly prejudicial.

Plaintiff claimed damages for the pain and emotional distress that decedent experienced before she died. The pathologist who testified formed his opinion by relying on the pictures, which show the position of, and clothing on, decedent's body. He testified that decedent had regained consciousness, stood up, put on her Levis and zipped them. She then became confused and disoriented from inhaling carbon monoxide from the fire, lost consciousness and died. He testified that the burns occurred after decedent lost consciousness. The pictures were relevant to show that she did

---

[1] RLTA has been renumbered since plaintiff brought this action. Citations are to the current provisions.

not die in her sleep and that, contrary to defendants' contention, it was the effects of carbon monoxide and not her consumption of alcohol that impaired her ability to escape from the bedroom. The pictures were relevant to the issues of whether decedent suffered pain and emotional distress and the extent of damages on that claim. Their prejudicial effect did not outweigh their probative value, and the trial court did not abuse its discretion in admitting them. *See Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972).

■ Defendants next assign error to the trial court's denial of their motion for partial directed verdict at the close of plaintiff's case, arguing that there was insufficient evidence to support plaintiff's allegations that defendants were negligent or in violation of RLTA because the house did not have electrical smoke detectors.[2] After denial of their motion, defendants proceeded to present their case and, at the close of trial, renewed their motion. They do not assign error to the denial of the second motion. However, if a defendant proceeds after the denial of a motion for a directed verdict at the close of a plaintiff's case, our review is not limited to the evidence produced by the plaintiff. We consider all the evidence and review it in the light most favorable to the plaintiff. *See Brown v. J. C. Penney Co.,* 297 Or 695, 688 P2d 811 (1984); *Roach v. Kelley Health Care,* 87 Or App 495, 501 n 7, 742 P2d 1190, *rev den* 304 Or 437 (1987).

Although RLTA itself does not specifically require smoke detectors, it does require that a landlord maintain a dwelling unit in a habitable condition at all times. ORS 90.320(1). A unit is considered uninhabitable if it "substantially lacks * * * [s]afety from the hazards of fire[.]" ORS 90.320(1)(j). Under ORS 479.255(1), every dwelling unit "occupied by a tenant * * * shall contain an approved and

---

[2] Defendants also contend that "as a matter of law [the RLTA] allegation should have been stricken." They argue that, because battery powered detectors are not excluded from the definition of "approved detectors," OAR 837-45-010, and are expressly allowed, OAR 837-45-020, their motion should have been allowed. It is not clear that defendants' motion was based, in part, on this argument. Assuming that it was, there was no error. Although the Fire Marshall's rules allow use of either a battery or electric powered detector, the choice of one or the other does not mean that a dwelling unit will, as a matter of law, be free from the hazards of fire, under the provisions of RTLA.

properly functioning smoke detector * * * installed in accordance with the rules of the State Fire Marshall * * *." Plaintiff alleged that the house was "uninhabitable," in violation of ORS 90.320, in that it lacked safety from the hazards of fire because, *inter alia,* it "[d]id not have smoke alarms operated by electrical wiring, although commercial electricity was used in the unit[.]"[3]

Plaintiff also alleged that defendants were negligent, because they knew or should have known that the unit was unsafe from the hazards of fire, in that "the unit was without functioning smoke alarms and/or defendants knew or should have known the tenants made them inoperable by removing the batteries," and that "the unit had no smoke alarms directly wired to a source of AC power, although such power was in use in the unit."

Plaintiff's theory was that defendants knew, or should have known, that the house had a wood stove, which the tenants used to provide heat; that the house either had no smoke detectors or that there were battery powered detectors; that there was a strong likelihood that, if there were battery powered detectors, they would not be operable, because tenants frequently took the batteries from them; and that electric powered detectors are available. Therefore, the house was not safe from hazards of fire, because it did not have electric powered detectors.

There was evidence sufficient to present a jury question on plaintiff's theory. The evidence was conflicting as to the existence of detectors in the house. Some tenants did not recall any. The rental agent testified that there were battery powered detectors and that he was aware that tenants removed batteries from smoke alarms about 20 percent of the time. Despite that knowledge, the agent had not tested the alarms between May, 1986, when the house was rented to the students, and November, when the fire occurred. The rental agent relied on tenants to notify him of failed batteries. Lester, broker for defendant Lester Real Estate, Inc., testified that tenant removal of batteries from the alarms was an

---

[3] Plaintiff's other allegations relating to smoke detectors were that the house did not have smoke alarms or that they were not functioning and that there were an inadequate number of or improperly located alarms.

"extensive problem" and that, in his inspection of vacated units, he "invariably" found that batteries had been removed from the alarms for use in radios and calculators or just to stop the beeping noise when the batteries started to run down. There was additional evidence that electric powered detectors are readily available, commonly used and cost no more than battery detectors, once they are installed. The rental agent testified that he had authority to install electric powered detectors in addition to battery powered ones but preferred battery powered detectors, because they did not go out in case of power failure. There was also evidence that a functioning detector probably would have awakened occupants of the house before the occupant of the room in which decedent slept was awakened by heat.

From that evidence, the jury could infer that the house had no detectors or that, even if the house had detectors, tenants' removal of batteries from detectors was a substantial problem and that defendants were aware of the extent of the problem. The jury could further infer that there was an alternative to battery powered detectors but that defendants chose not to use them because of the installation expense. From that evidence, the jury could conclude that the house had no functioning battery powered detectors; that, given the nature of the difficulties with battery detectors, defendants should have installed electric powered detectors; and that their failure to do so made the house unsafe from the hazards of fire. The trial court did not err in denying defendants' motion for partial directed verdict.

■■ Defendants also contend that the alleged negligent failure to install electric powered detectors was not supported by any evidence establishing that their choice of detectors was causally related to the fire and to decedent's death.[4] However, there was testimony from the LaGrande Fire Marshall and the State Deputy Fire Marshall that, if there had been "an operable smoke alarm" on the wall above the landing in the stair well, it would have detected smoke and sounded before

---

[4] Plaintiff disputes that this issue is properly before the court. Defendants obscured the question in their brief by omitting a significant portion of the transcript relating to this assignment. However, we conclude that the error was argued to the trial court.

any smoke reached the bedroom where decedent was sleeping. The jury was entitled to infer from the evidence that, if there had been an electric powered detector, it would have awakened the occupants in sufficient time to escape and that defendants were negligent in not providing an electric powered detector, given their knowledge of the difficulties with battery powered ones.[5]

■ Defendants next challenge three instructions on the duty of care owed by a landlord. They argue that it was error to instruct the jury:

"You are instructed that an owner and landlord of a house rented on a month to month basis must ascertain the condition of his premises and exercise reasonable care to protect renters and their guests from dangers foreseeable from the layout and use of the premises.

"You are instructed that an owner and landlord has a duty to warn his renters of dangers that he knows or with responsible inspection could ascertain with respect to conditions of and on his property.

"You are instructed that the duty of an owner and landlord to make his premises reasonably safe for people who lawfully come on to the premises also includes the duty to take reasonable steps to guard against the foreseeable negligent conduct of third persons such as renters who may also be on the land."

■ ■ A judgment will not be reversed on the basis of instructions unless the court determines that the challenged instruction is erroneous and the error is likely to have misled the jury and affected the outcome of the case. *Waterway Terminals v. P.S. Lord,* 256 Or 361, 370, 474 P2d 309 (1970). The claim of error is considered in the light of the instructions as a whole. *Hansen v. Bussman,* 274 Or 757, 781, 549 P2d

---

[5] Defendants assign error to the denial of their motion for partial directed verdict on the ground that there was insufficient evidence to create a jury question that the house did not have adequate fire protection on the floor under the wood stove. There was evidence from which the jury could have found that the protective pad did not extend 18 inches from the stove, as required by the Building Code, that one of the occupants moved a chair as close to the front of the stove as the hearth would allow, that radiant heat raised the temperature of the chair until it smoldered but that, if the hearth had met code requirements, the chair would not have ignited. From that evidence, the jury could infer that the size of the hearth was a contributing factor in the fire. We do not agree with defendants that plaintiff represented to the court that he was not asserting this theory.

1265 (1976). Defendants argue that the first instruction allowed the jury to hold them liable for the tenants' furniture arrangements, that the second said nothing about a guest's duty to avoid obvious dangers and that the third made them liable for a tenant's negligent conduct. Plaintiff disputes which arguments defendants preserved on each instruction. However, the main thrust of defendants' position on each is that it imposed a stricter standard of common law liability than Oregon cases have recognized, because it did not make clear that the extent of a landlord's liability depends upon the extent of his control over the premises. We conclude that that argument was preserved.

■ A litigant is entitled to instructions on his theory of the case, if the instructions correctly state the law and are based on the pleadings and proof. *Denton v. Arnstein,* 197 Or 28, 46, 250 P2d 407 (1952). The instructions were based on *Bellikka v. Green,* 306 Or 630, 762 P2d 997 (1988), in which the court held that a third person may maintain a negligence action against a landlord for injuries caused by a dangerous condition existing on the property at the time of the rental that the landlord knew or should have known created an unreasonable risk of harm. Despite defendants' arguments to the contrary, the instructions do not expand that holding by making them liable for any harm caused by third parties arising after the start of the lease.

Plaintiff alleged that defendants knew or should have known that, when they rented the house, there were two dangerous conditions on the premises: a defective wood stove and the absence of functioning smoke detectors. In addition to evidence about the detectors, plaintiff presented evidence that defendants provided the wood stove, knew that it would be used and knew that it was defective, including that the heat could not be controlled and that the protective mat underneath it did not meet code requirements.[6] Plaintiff was entitled to instructions that would permit the jury to consider defendants' obligation to protect renters and third parties from foreseeable dangers existing because of those conditions, including dismantling of smoke detectors and use of the stove.

---

[6] *See* n 5, *supra.*

Defendants do not claim that they asked for instructions that they had no liability for obvious dangers or that they had no liability for the tenants' actions. The trial court gave defendants' instruction that the jury

"may consider the nature of the dangerous condition and whether the landlord would reasonably expect that the tenants would take the necessary steps to eliminate the hazard or to warn their guest of the danger."

The jury was also instructed on comparative negligence. The instructions, as a whole, did not impose liability on defendants beyond that recognized by Oregon law.

Defendants next assign error to the trial court's instruction on comparative negligence. They argue that the instruction misled the jury, because it referred to wilful wrongdoing and included an illustration that could have led the jury to conclude that a conclusion of equal fault represented a defense verdict. There was no error. The trial court gave a precautionary instruction that made it clear that wilful wrongdoing was not an issue in the case. It also instructed the jury that, if decedent's fault exceeded the total of defendants' fault, it must return a verdict for defendants but, if decedent's fault was no more or less than defendants', the verdict should be for plaintiff.

Defendants also argue that, because the instruction in fact confused the jury, it was error not to reinstruct the jury when it initially failed to return a complete verdict form. Defendants' position is that, because the jury did not at first respond to the questions regarding damages in favor of plaintiff, it was trying to return a defense verdict and the trial court's failure to reinstruct prevented it from properly indicating its intention. After the jury returned the incomplete verdict, the court sent a note to the jury:

"Your verdict is not complete because you have not answered [the amount of plaintiff's damages]. If necessary you should review the instructions in full."

Defendants contend that the note, in effect, told the jury to find against defendants. It did not. The trial court's instructions had been recorded and were sent to the jury. The effect of the note was to grant defendant's request for reinstruction.

752

 Defendants' remaining assignments of error relate to the judgment entered on the jury's verdict.[7] The parties and the trial court discussed the verdict form in chambers, and only part of the discussion was recorded. Following the discussion, a special verdict form was submitted to the jury. It set out two claims for relief—one for negligence and the other for violation of RLTA—and required the jury to make separate findings on the amount of damages on each claim. The jury did so. The verdict was received without objection. When plaintiff submitted a judgment based on that verdict, defendants objected, contending that the proposed judgment was contrary to an understanding reached by the parties that the trial court would not enter a judgment allowing a double recovery. Defendants do not argue that the trial court should not have accepted the verdict. Their position is that the trial court erred in entering judgment on the verdict which did not comport with *their understanding* of what would constitute duplicated damages. The trial court specifically rejected defendants' counsel's "understanding."[8]

 Defendants' counsel submitted affidavits of their recollections of the discussion in which they stated that plaintiff's attorney had not indicated an intention to have separate damages on each claim. If he had, they claim that they would have objected and would have requested "appropriate" jury instructions. They argue that the "focus should be on the damages sought, not the theory for recovery. * * * [T]he existence of more than one theory of recovery does not serve to multiply the damages that should be recoverable."

---

[7] Defendants also assign error to the trial court's denial of their motion to supplement the record with the "discussions contained in the affidavits of counsel," filed in support of their motions for a new trial. Defendants' assignment is obscure, and they have failed to set out verbatim the alleged error from the record. ORAP 5.45(4). As we understand the argument, there was no error, because the affidavits that defendants wanted considered on appeal were already included in the trial court record.

[8] Defendants also assign error to the trial court's denial of their motion for a new trial made after they learned that the audio record was incomplete. They contend that there is not a full and complete transcript for appeal, although they do not claim that they have tried to recreate the missing portions. There was no error. The affidavits of both defendants' and plaintiff's counsel regarding their discussion in chambers about the verdict form were fully considered by the trial court, and it found that there was no agreement between the attorneys that excused defendant's failure to object to receipt of the verdict. Defendants contend only that the trial court's denial of the motion for a new trial on this issue was an abuse of discretion.

Defendants failed to make that position clear to the jury. They did not request an instruction that, if the jury should conclude that defendants were liable for both claims, an award of damages on one would preclude a finding of damages on the other.[9] The trial court concluded:

"[T]he disagreement about what the jury intended by the verdict flows not from the verdict form itself but from the fact that the jurors were not made to understand that the same damages were claimed in each claim for relief."[10]

The verdict was within plaintiff's prayer on each claim and was so argued to the jury. The jury could find that defendants violated RLTA *and* that they were negligent and could award damages for each. The jury did so. Even if defendants believed that the verdict was defective on the issue of damages, they failed to object to that verdict so that the trial court could determine whether to resubmit the case. Defendants' objection to the form of the judgment did not properly preserve the issue for appeal. *See Smith v. J. C. Penney Co.,* 269 Or 643, 655, 525 P2d 1299 (1974).

Affirmed.

---

[9] The awards for general damages of $205,000 and emotional suffering of $75,000 were identical. Special damages on the RLTA negligence claim were $2,000 and $1,800.

[10] The trial court explained its reasoning:

"It is apparent to me that the jury intended to award the sum of damages expressed in paragraphs 4 and 8 of the verdict. The damages stated in the proposed judgment are within the amounts claimed by plaintiff in summation. There is no other rational explanation for the jury having awarded special damages of $2,000 on one claim for relief and $1,800 on the other given the parties' stipulation that special damages were $3,818. Omission of the eighteen dollars is *de minimus*. The verdict form permits the jury to express damages separately for each claim for relief. The jury was not made to understand, either by instruction or argument of counsel, that the same damages were claimed in each claim for relief. Combining the damages separately expressed in the verdict is not duplication."