Argued and submitted July 23, 1993, reversed and remanded on negligence claim and otherwise affirmed on appeal; reversed and remanded for award of attorney fees on cross-appeal March 23, 1994

Sharele M. DIKEMAN,
*Appellant - Cross-Respondent,*

*v.*

CARLA PROPERTIES, LTD.,
*Respondent - Cross-Appellant.*

(C91 1108CV; CA A77074)

871 P2d 474

Charles A. Ringo argued the cause and filed the briefs for appellant - cross-respondent.

Lindsey H. Hughes argued the cause for respondent - cross-appellant. With her on the brief were Paul R. Xochihua, Karen V. Wiggins and Hallmark, Keating & Abbott, P.C.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Plaintiff brought this action to recover for injuries sustained when she tripped and fell on a stairway located in a common area of the apartment complex where she resides. She claimed that the stairs were in a dangerously unsafe condition,[1] both in violation of Oregon's Residential Landlord Tenant Act (RLTA), ORS 90.100 *et seq*, and as a result of negligence. She sued only defendant, the company that manages the apartment complex and is responsible for its maintenance.[2] After plaintiff presented her case-in-chief, the trial court granted defendant's motion for a directed verdict on both of plaintiff's claims. It awarded costs, but not attorney fees, to defendant. Plaintiff appeals, assigning error to the directed verdict, and defendant cross-appeals, assigning error to the denial of its request for attorney fees.

On plaintiff's first claim, which alleges that defendant violated the RLTA by failing to maintain the premises in a habitable condition, the trial court ruled that plaintiff had failed to establish that defendant is a "landlord," as defined by ORS 90.100(6). The court also held that, as a matter of law, a property management company that provides notice of its non-owner status is not a landlord for purposes of the RLTA. The court found that defendant had provided such notice to plaintiff at the beginning of her tenancy.

Plaintiff's RLTA claim was based on ORS 90.360(2), which provides:

> "Except as provided in ORS 90.100 to 90.940, the tenant may recover damages and obtain injunctive relief for any *noncompliance by the landlord with* the rental agreement or *ORS 90.320*." (Emphasis supplied.)

ORS 90.320 provides, in part:

> "(1) A *landlord* shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

---

[1] Specifically, plaintiff alleged that the light near the stairs was burned out, the stairs were unstable and the steps' risers were of uneven size.

[2] Plaintiff did not sue the owner of the property and does not appear to have sued defendant in its capacity as an agent for the owner.

"* * * * *

"(h) Floors, walls, ceilings, stairways and railings maintained in good repair[.]" (Emphasis supplied.)

The RLTA defines "landlord" as:

"the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, *and it also means a manager of the premises who fails to disclose as required by ORS 90.305*." ORS 90.100(6). (Emphasis supplied.)

ORS 90.305 provides, in part:

"(1) The landlord or any person authorized to enter into a rental agreement on behalf of the landlord shall disclose to the tenant in writing at or before the commencement of the tenancy the name and address of:

"(a) The person authorized to manage the premises; and

"(b) An owner of the premises or a person authorized to act for and on behalf of the owner for the purpose of service of process and receiving and receipting for notices and demands."

The rental agreement between plaintiff and defendant contains the following provision: "The person authorized to manage the premises and to act for and on behalf of the owner and address are: Carla Properties, Ltd., Address: 633 NW Nineteenth Avenue, Portland, Oregon." Plaintiff concedes that that language meets the notice requirements of ORS 90.305(1).

Nonetheless, plaintiff argues that defendant should be deemed a landlord, because the rental agreement signed by the parties refers to defendant as the "landlord," and, in another section, refers to defendant as the "lessor." Although defendant's representation of itself as the landlord/lessor may have legal ramifications in other contexts, here the narrow question is whether defendant, as a property management company, falls within the RLTA's definition of a "landlord." A property manager will be considered a landlord and, as a consequence, will be subject to the RLTA-based obligations that attend that designation, if the manager fails to disclose the name and address of the person authorized to manage the premises and the person authorized to act for and

on behalf of the owner.[3] However, having complied with ORS 90.305, defendant has placed itself outside the RLTA definition of a landlord. Accordingly, the trial court did not err when it held that the RLTA did not apply and entered a directed verdict for defendant on plaintiff's first claim.

Plaintiff's second claim alleged that defendant was negligent, because its failure to maintain the apartment complex in a safe condition made it reasonably foreseeable that a tenant would be injured, and, in fact, plaintiff had been injured as a result of that failure. On that common law negligence claim, the trial court determined that, as a landlord, defendant stood in a special lessor/lessee relationship to plaintiff that rendered inapplicable the foreseeability test in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). It then held that defendant could not be held liable for its negligence because it did not own the property.

■ First, plaintiff argues that the trial court erred in concluding that defendant is not a landlord under the RLTA, but *is* a landlord/lessor for purposes of a common law negligence action. We do not find those two rulings to be inconsistent, however, because a party's status under a *statute* does not necessarily dictate its status for purposes of a common law action. The statute contains a narrower definition of "landlord" or "lessor" than the traditional definition, which includes persons who own rental property or who have authority to enter into rental agreements. *See Black's Law Dictionary* 812 (5th ed 1979) ("lessor" is one who "rents property to another").[4] We conclude that, in the light of defendant's admitted duties as a leasing agent and its representation of itself as the "landlord" and "lessor" in its lease agreements with tenants, the trial court did not err in holding that, for purposes of plaintiff's common law negligence claim,

---

[3] *See also* ORS 90.310(4) (a manager who complies with the disclosure requirements of ORS 90.305 will not be liable for damages that result from, *inter alia*, any outstanding notice of default under a mortgage, a pending suit to foreclose or a pending declaration of forfeiture).

[4] In *Kilgore v. People's Savings & Loan Assn.*, 107 Or App 743, 814 P2d 163 (1991), the plaintiff sued both the owner and the property manager of a rental house for a violation of the RLTA and for common law negligence. In that case, the defendants were referred to jointly as "an owner and landlord." 107 Or App at 749. The applicability of the RLTA was not challenged by the defendant property manager.

defendant falls within the definition of a "landlord" and, therefore, a special landlord-tenant relationship exists between the parties. Defendant acknowledges that "the standard of care of a landlord to a tenant provides the appropriate framework for analyzing defendant's liability to plaintiff" on the common law negligence claim.

■ Next, plaintiff argues that the trial court erred in concluding that defendant *could not* be held liable for negligence because of its non-owner status. Plaintiff is correct. *See, e.g., Boger v. Norris & Stevens, Inc.*, 109 Or App 90, 818 P2d 947 (1991), *rev den* 312 Or 588 (1992); *Helsel v. Western Elevator Service, Inc.*, 103 Or App 307, 797 P2d 381 (1990).

■ Plaintiff also contends that defendant should not have been allowed to prevail on the second claim for relief, because defendant untimely presented an "affirmative defense (or avoidance)" at the close of plaintiff's case-in-chief. That argument is without merit. The transcript shows that defendant sought a directed verdict on the common law negligence claim on the ground that plaintiff had failed to establish that defendant's actions (or inaction) did not meet the standard of care owed by defendant to plaintiff. Specifically, it argued that plaintiff had failed to show that defendant had a duty to replace the light bulb and maintain the stairs *and* that defendant had not upheld that duty. In sum, defendant challenged the sufficiency of plaintiff's evidence. Plaintiff responded that she should win on the basis of the foreseeability test articulated in *Fazzolari v. Portland School Dist. No. 1J, supra*. That prompted a discussion among the parties and the court regarding whether *Fazzolari* applied to individuals in a lessor-lessee relationship. Although plaintiff may not have been prepared to discuss the precise issue that arose during that discussion—the standard of care to which defendant should be held, given the trial court's ruling that defendant was not a landlord for purposes of the RLTA—that fact does not constitute a failure, on the part of defendant, to timely present an "affirmative defense."

■ Finally, plaintiff argues that the trial court misunderstood the effect that the parties' lessor-lessee relationship had on defendant's duty to maintain the premises and, as a result, the court erred in holding that defendant could not be liable to tenants for negligent maintenance of the stairway

and its lighting. We agree with plaintiff. Although the trial court correctly held that the foreseeability analysis articulated in *Fazzolari* does not apply to these parties because of their special landlord-tenant relationship, the court's subsequent conclusions reveal some confusion on this and related matters.

■ As the party responsible for maintaining the apartment complex, it is axiomatic that defendant may expose itself to liability if it negligently performs its maintenance duties. A claim could be based on defendant's failure to properly perform the obligations that it assumed under its contract with plaintiff, or those that it assumed under its contract with the property owner. *See Helsel v. Western Elevator Service, Inc., supra.* Alternatively, a claim could be based on defendant's *status* as an agent for the property owner or its special landlord-tenant *relationship* to plaintiff, and the responsibilities that attend that status or relationship,[5] such as maintaining the common areas of the apartment complex in a safe condition. *Jones v. Bierek*, 306 Or 42, 45, 755 P2d 698 (1988). Here, plaintiff chose the latter course, but framed her arguments in terms of defendant's failure to exercise due care in maintaining the premises and the reasonable foreseeability that that failure would cause injury to a tenant. On appeal, plaintiff contends that, even under a "duty" analysis, she should prevail because defendant had an admitted duty to maintain the premises and plaintiff was injured as a result of defendant's breach of that duty.

■ It has often been said that *Fazzolari* did not abolish the "special relationship" rules that were articulated in pre-*Fazzolari* cases, and that the existence of a special relationship "takes the claim out of the general standards of common law negligence." *Rex v. Albertson's, Inc.*, 102 Or App

---

[5] In *Buchler v. Oregon Corrections Div.*, 316 Or 499, 505 n 2, 853 P2d 798 (1993), the court wrote:

"The relationship between a plaintiff and a defendant is important in Oregon tort law under the cases discussed in the text. The separate concept of relationship between a defendant and the person or instrumentality causing or threatening to cause a specific harm may also raise duties to third parties as, for example, the duty of a landlord to a tenant's invitee. The duties to the third party arise out of the defendant's status, not from a special relationship between the third party as plaintiff and a defendant."

178, 180-81, 792 P2d 1248 (1990); *Thompson v. Klimp*, 101 Or App 127, 130, 789 P2d 696 (1990). In other words, the existence of a special relationship—as, for example, the one between a landlord and a tenant—"creates, defines, or limits" the duties that are owed by the parties to that relationship. *Fazzolari v. Portland School Dist. No. 1J, supra*, 303 Or at 17; *see also Buchler v. Oregon Corrections Div., supra* n 5, 316 Or at 504, 505 (citing *Park v. Hoffard*, 315 Or 624, 631-32, 847 P2d 852 (1993)). As the court explained in *Buchler*, "[i]t is only when there is *no* such special relationship * * * that *Fazzolari's* general foreseeability principle * * * comes into play." 316 Or at 504.[6] (Emphasis supplied.)

 As a general rule, the extent of a landlord's liability in a common law negligence action depends on the status of the injured party (*e.g.*, a tenant, or a tenant's guest) and the extent of the landlord's control over the premises. *See Kilgore v. People's Savings & Loan Ass'n, supra* n 4, 107 Or App at 750. To ascertain the duty of care that is owed by a landlord to a tenant in a particular factual circumstance, we have generally looked to the *Restatement (Second) Torts* (1965) for its definitions of standards of conduct. Although wholesale reliance on the *Restatement* is no longer the practice in Oregon, it still may provide guidance. *Park v. Hoffard, supra*, 315 Or at 629 n 3. Defendant would have us resolve this case on the basis of the general rule that a lessor is not liable to a lessee for injuries "caused by any dangerous condition which comes into existence after the lessee has taken possession." *Restatement (Second) Torts* § 355. Defendant argues that it was entitled to a directed verdict because the record contains no evidence that, before plaintiff moved in, there was any defect in the stairway or its lighting.

 However, the facts of this case do not involve pre-existing dangerous conditions. They relate to the care with which continuing maintenance duties—including both the

---

[6] That "general foreseeability principle" is explained in the following passage from *Fazzolari, supra*, 303 Or at 17:

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

discovery and repair of dangerous conditions—were performed with respect to premises that were retained in defendant's control but which plaintiff was entitled to use. We note, in particular, the applicability of section 360 of the *Restatement (Second) Torts*, which provides:

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee * * * for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

Also relevant to the question of defendant's duty in this context is the rule contained in *Restatement (Second) Property*, Landlord & Tenant, § 17.3 (1977), which provides:

"A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant * * * for physical harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have:

"(1) discovered the condition and the unreasonable risk involved therein; and

"(2) made the condition safe."

Those rules correspond with established Oregon law. For example, in *Woolston v. Wells*, 63 Or App 7, 12, 663 P2d 408 (1983), *aff'd* 297 Or 548, 687 P2d 144 (1984), in which a landlord leased property but retained control of an exterior stairway, we held that

"[t]he occupier of land who, as a landlord, retains control over the common area of the leased premises has an obligation to make the common area safe for the broad range of the tenant's invitees."[7]

---

[7] In affirming our decision, the Supreme Court added that such a landlord must also

"exercise the standard of care above stated to *discover* conditions of the premises that create an unreasonable risk of harm * * *." *Woolston v. Wells, supra,* 297 Or at 557-58. (Emphasis supplied.)

That obligation is, if anything, heightened with regard to the tenants themselves. *See also Garrett v. Eugene Medical Center*, 190 Or 117, 127, 224 P2d 563 (1950). Accordingly, we conclude that the trial court erred in holding that, as a matter of law, defendant could not be held liable to tenants for negligent maintenance of the common stairway and its lighting.

■■ We turn to the propriety of the court's ruling that defendant was entitled to a directed verdict on plaintiff's second claim for relief. We review the record in the light most favorable to plaintiff to determine whether the evidence, and the inferences that may be drawn therefrom, created a fact question for the jury. *Schroeder v. Northrup Services, Inc.*, 86 Or App 112, 739 P2d 33, *rev den* 304 Or 185 (1987).[8] In order to survive defendant's motion for a directed verdict, plaintiff was required to present some evidence to establish the existence of a duty that was breached by defendant in a manner that caused harm to her. *Park v. Hoffard, supra*, 315 Or at 632 n 7.

■■ Defendant's duty was established by the fact of the landlord-tenant relationship and defendant's attendant obligation to maintain the common areas of the apartment complex in a safe condition, and by defendant's acknowledgement that it was responsible for providing such maintenance. Evidence of the breach of that duty—that is, a showing that defendant's actions fell below the standard of care established for the protection of tenants against unreasonable harm— was provided by defendant's testimony that, although it was aware of the fact that the stairs "wiggled a little bit" and were making some noise, it did not repair them,[9] and it was aware that both overhead fluorescent light bulbs were out, but had not replaced them, and the person who actually performed the maintenance work was "slow doing it." On the basis of that testimony, the jury could have found that defendant

---

[8] In other words, "[d]oes the evidence introduced [by plaintiff] reasonably permit findings of fact on which the law will allow the plaintiff to recover from the defendant?" *Buchler v. Oregon Corrections Div., supra* n 5, 316 Or at 509.

[9] Although the apartment manager testified that he had never received any complaints about the steps being uneven, the jury could have decided that the manager had nonetheless been negligent in failing to discover the condition. When asked, "Is it your testimony that the * * * rise and run of the stairs was even?" the manager answered, "Pretty much so, yes."

knew or, in the exercise of reasonable care, should have discovered, that the stairs were unsafe and the lighting was inadequate. Evidence of causation and damage was provided by plaintiff's testimony that she tripped because it was too dark to see the steps and that her resulting injury, which required medical treatment, caused her to be absent from work for two weeks; in her absence, her job was filled by someone else.[10] We conclude that the jury was provided with evidence to establish each element of a common law negligence claim, and, therefore, the case should have been allowed to proceed to a jury verdict. Accordingly, the trial court erred in directing a verdict for defendant on that claim.

Defendant's cross-appeal challenges the trial court's ruling that "[t]he Landlord Tenant Act doesn't apply, so [defendant is] not entitled to attorney fees." We agree with defendant that, having established that plaintiff was not entitled to recover against it under the RLTA, defendant was the "prevailing party" on plaintiff's RLTA-based claim for relief and is entitled to attorney fees under that statute. ORS 90.255.[11] *See also Steininger v. Tosch*, 96 Or App 493, 496, 773 P2d 15, *rev den* 308 Or 198 (1989). The trial court erred in concluding otherwise.

On appeal, reversed and remanded on negligence claim and otherwise affirmed; on cross-appeal, reversed and remanded for award of attorney fees to defendant.

---

[10] Plaintiff also testified that, in her job as a traffic flagger, she earned $17 an hour and she had expected to work at least 40 hours a week when she returned to her job.

[11] ORS 90.255 provides:

"In any action on a rental agreement or arising under ORS 90.100 to 90.940, reasonable attorney fees at trial and on appeal may be awarded to the prevailing party together with costs and necessary disbursements, notwithstanding any agreement to the contrary. *As used in this section, 'prevailing party' means the party in whose favor final judgment is rendered.*" (Emphasis supplied.)