Argued and submitted October 4, 1995, reversed and remanded for new trial
January 24, 1996

## COULTER PROPERTY MANAGEMENT, INC.,
*Appellant - Cross-Respondent,*

*v.*

## Samuel JAMES,
*Respondent - Cross-Appellant.*

## (9305-02944; CA A85455)

910 P2d 397

Ralph C. Spooner and Mary Kim Wood argued the cause for appellant - cross-respondent. With them on the briefs was Spooner & Much.

Jeffrey C. Jacobs argued the cause and filed the briefs for respondent - cross-appellant.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Plaintiff (landlord) appeals from a judgment, following a jury trial, in favor of defendant (tenant) on tenant's counterclaim for damages arising out of hand and wrist injuries sustained when the railing of his second story apartment balcony broke and tenant fell to the ground. Tenant cross-appeals, challenging a supplemental judgment that awarded him $15,000 in attorney fees but denied his request for a considerably larger award that would have been based on his 40 percent contingent fee agreement with his attorney. We reverse and remand for a new trial.

After the accident, tenant was temporarily unable to work, and he failed to pay his rent when it became due. Landlord filed an FED action.[1] Tenant counterclaimed for personal injuries, alleging several counts of common law negligence and a violation of the Residential Landlord-Tenant Act (RLTA). ORS 90.100 *et seq.*[2] Only tenant's counterclaims went to trial. Landlord's defense was that it had no notice of any defect in the balcony railing and that tenant's injuries had been caused by his own negligence, particularly his intoxication and resulting failure to restrain his friends, whom landlord alleged had used the balcony in an unsuitable manner that caused the railing to break loose.

During the proceedings below, the trial court dismissed some of tenant's common law negligence allegations and struck his RLTA claim.[3] However, the court then amended tenant's common law negligence claim to *include* the RLTA-based claim on a theory of negligence *per se*. As a result, the jury was ultimately asked to consider whether landlord had been negligent in

---

[1] The resolution of the FED action is not before us on appeal.

[2] ORS 90.320(1)(h) provides: "A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks: * * * railings maintained in good repair[.]"

[3] Although the court's ruling was not a model of clarity, it appears to have decided that tenant did not have an independent action under the RLTA because to allow recovery when a landlord has no notice of an unhabitable condition would impose "absolute liability" on landlords. *See Humbert v. Sellars*, 300 Or 113, 124 n 5, 708 P2d 344 (1985) ("Must the landlord be aware of the state of disrepair and have an opportunity to repair?") (Lent, J., specially concurring). It was undisputed that neither tenant nor landlord in this case had notice of any defect in the balcony railing.

"failing to properly maintain the deck and railing;

"failing to inspect the deck and railing [for an] unreasonably dangerous condition; and

"maintaining a railing on the deck in violation of the Oregon Landlord-Tenant Act."

The jury was instructed that tenant had the burden of proving that landlord was negligent "in at least one of [those] particulars[.]"

At trial, landlord sought to establish that tenant had been intoxicated at the time of the accident and had failed to stop two of his friends from engaging in horseplay that broke the balcony railing and caused the three of them to fall to the ground. Tenant sought to show that the railing had given way without any warning when he and his friends had simply leaned against it. Photographs revealed that the hardware attaching the railing to the balcony was rusted. It was undisputed that landlord had annually inspected the balcony and that neither landlord nor tenant had known that the railing was defective in any way. The only issue, then, was whether landlord should have known of a latent defect, *i.e.*, whether its inspections had not been sufficiently thorough to identify a problem in the making.[4] After tenant had presented his case, landlord moved for a directed verdict on the ground that tenant had failed to produce evidence sufficient to support a verdict on either a common law theory of negligence or a theory of negligence *per se*. The motion was denied.

During the three day trial, the parties and the judge engaged in frequent colloquy regarding the standard of care that is applicable to a landlord. Landlord argued that as a general rule, when a landlord is the subject of a tenant's common law negligence claim, the *Restatement (Second) Torts* expresses the applicable standard of care to which the landlord will be held. Without explanation, the court rejected that argument. Landlord also argued that, because of the special relationship between landlord and tenant, the standards of liability articulated in the *Restatement* apply and the

---

[4] *See Restatement (Second) Property* (Landlord & Tenant) § 17.6, *comment c* (landlord subject to liability for conditions that violate a duty created by statute, if landlord is aware of the condition or in the exercise of reasonable care would have become aware).

"general foreseeability" principle announced in *Fazzolari v. Portland School District No. 1J*, 303 Or 1, 734 P2d 1326 (1987), does not.[5] The court summarily rejected that argument too, and over *both* parties' protestations, the court announced that it would be "following" *Fazzolari.* However, the court ultimately gave the following common law negligence instruction:

> "In general, it is the duty of every person in our society to use reasonable care in order to avoid injury to themselves or to others. Reasonable care is that which persons of ordinary prudence exercise in the management of their own affairs.
>
> "Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do under the same or similar circumstances to avoid injury."

The court also instructed the jury on the negligence *per se* claim, as follows:

> "In addition to common-law negligence, there is statutory negligence which consists of the violation of a statute enacted by the Legislature or an ordinance that for the safety or protection of others requires or prohibits certain conduct. Both [landlord] and [tenant] allege that the other violated the Oregon Landlord Tenant Act which [the court paraphrased as follows]:
>
> "A Landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. A dwelling unit is unhabitable as a matter of law if the building and appurtenances which include any porches and railings at the time of the commencement of the lease substantially lacks being in good repair and in every part safe for normal and reasonably foreseeable uses.
>
> "The tenant shall: (1) Use the premises in a reasonable manner considering the purposes for which they were designed and intended; (2) Not deliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so.

---

[5] That principle was articulated as follows:

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari*, 303 Or at 17.

"A violation of [the RLTA] constitutes negligence in and of itself unless you find from all the evidence that such party was acting as a reasonably prudent person under the circumstances."

The jury found that landlord was negligent, but the verdict form did not ask it to designate on which of the three claims (*i.e.*, failure to maintain, failure to inspect, or violation of the RLTA) that verdict was based. It found that tenant was not negligent and awarded him $32,893 in economic damages and $333,000 in noneconomic damages.

On appeal, landlord assigns error to numerous rulings, including the court's refusal to give requested jury instructions and its denial of landlord's motion for judgment *n.o.v.* and alternative motion for a new trial.

■ Landlord argues that the trial court erred in instructing the jury to apply general common law negligence standards instead of the standards that are articulated in section 358 of the *Restatement (Second) Torts*. We agree.

The traditional negligence analysis that the trial court applied in this case has been superceded by the generalized foreseeability formula announced in *Fazzolari*. *See* n 5 above; *see also Buchler v. Oregon Corrections Div.*, 316 Or 499, 516-23, 853 P2d 798 (1993) (comparing pre-*Fazzolari* concepts of duty, breach and causation with *Fazzolari's* "foreseeable risk of harm" formula) (Peterson, J., concurring). *Fazzolari* states that that formula is to be applied *unless* the parties "invoke a status, a relationship, or a particular standard of conduct that creates, defines or limits the defendant's duty." *Fazzolari*, 303 Or at 17. Such a relationship exists between landlords and tenants. *Park v. Hoffard*, 315 Or 624, 631, 847 P2d 852 (1993). There are distinct standards of conduct — many of which are articulated in *Restatement (Second) Torts* §§ 355-62 and *Restatement (Second) Property* (Landlord & Tenant) §§ 17.1-18.4 — that define and limit a landlord's legal duty to a tenant. *Dikeman v. Carla Properties, Ltd.*, 127 Or App 53, 60, 871 P2d 474 (1994). As recently as 1980, the *Restatement (Second) Torts* was accepted as "the law governing the liability of a landlord to a tenant." *Richards v. Dahl*, 289 Or 747, 749, 618 P2d 418 (1980). Although such "wholesale reliance on

the *Restatement* is no longer the practice in Oregon," *Dikeman*, 127 Or App at 60, the *Restatement* continues to be applied except where its rules "are based on outmoded understandings of legal relationships." *Park*, 315 Or at 629. Here, the *Restatement (Second) Torts* provides the appropriate rule for determining the standard of conduct to which a landlord will be held when a tenant has exclusive control over the place where the injury occured. Section 358 of the *Restatement* provides that a landlord is liable to a tenant if the landlord

> "fails to disclose to his lessee any condition which involves an unreasonable risk of harm if (a) the lessee has no reason to know of the condition or risk and (b) *the lessor has reason to know* of the condition and should realize the risk involved and has reason to expect that the lessee will not discover the condition or realize the risk." *Richards*, 289 Or at 749 (summarizing section 358) (emphasis supplied).

■　　In sum, the trial court erred in giving a standard negligence instruction instead of landlord's special instruction #26, which was based on section 358 of the *Restatement*. The pertinent question in this case was whether landlord had "reason to know" about the allegedly dangerous condition of the balcony railing, specifically, whether landlord's annual inspections were negligently performed and as a result failed to uncover existing defects. However, because of the manner in which the court instructed the jury, that question was neither asked nor answered.

■　　We next consider the negligence *per se* claim. As noted above, the trial court struck tenant's RLTA claim on the ground that landlord had no notice of any defect in the railing before the accident. That ruling was correct. The RLTA provides legal recourse for a tenant whose dwelling unit is "unhabitable" because it "substantially lacks" the basic health and safety features that are enumerated in the statute. ORS 90.320(1). The RLTA has never been applied to situations in which a landlord has regularly inspected the premises, there is no known defect, possession has been transferred to the tenant, the tenant is either unaware of any defect or is aware but has not notified the landlord, and the alleged defect is in an area over which the tenant has exclusive control, as was the case here. Furthermore, in the absence of an agreement to do so, a landlord does not have an obligation to repair defects that are not obvious and that arise after the

tenant has assumed exclusive control of the premises. *Propp v. Long*, 129 Or App 273, 280, 879 P2d 187, *rev den* 320 Or 271 (1994). Accordingly, although the trial court properly dismissed tenant's RLTA claim on the ground that landlord had no notice of any defect in the railing before the accident, it erred when it allowed that same claim to go forward under a different label.

■ Finally, the court erred when it refused to poll the jury in a manner that would have revealed which of the three claims provided the basis for the jury's decision that landlord was negligent. *See Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 359, 788 P2d 428 (1990) (new trial is the remedy when it cannot be determined "whether the verdict was based on an allegation supported by the evidence or on one unsupported by the evidence").

After judgment was entered in his favor, tenant was awarded $15,000 in attorney fees on the basis of a provision in the RLTA that authorizes an award of reasonable attorney fees to the prevailing party. ORS 90.255. The $15,000 fee award was to be offset from any contingent fee received by his attorney. On cross-appeal, tenant argues that $15,000 was too low an amount, and that the amount should have been based on the 40 percent contingent fee agreement that he had entered into with his attorney. We do not address that argument. Because of our conclusion that tenant had no legal basis for a claim under the RLTA, the fee award automatically falls.

Reversed and remanded for a new trial.